Anthony Wiehardt, a Minor, by His Father and Next Friend, George Wiehardt, Appellee, v. Krey Packing Company, Appellant.

Opinion filed February 1, 1932.

M. R. Sullivan, for appellant.

A. Austin Lewis and Harold J. Bandy, for appellee.

Mr. Justice Edwards delivered the opinion of the court.

Appellee, Anthony Wiehardt, a minor, by his father and next friend, sued in the city court of Granite city, in an action of case, to recover of appellant damages claimed to have resulted from eating diseased frankfurters purchased of one Hatscher, a retail dealer, who had been supplied with the meat by appellant. Plea of general issue was filed, the cause tried by jury; verdict, and judgment for appellee in the sum of

$2,250, to review which judgment this appeal is prosecuted.

On May 17, 1930, appellee, a boy about 11 years of age, was living with his parents, and seven brothers and sisters, in Granite City. In the afternoon of that day his mother sent another son to the grocery and market of Frank Hatscher to purchase some supplies. This son bought certain groceries; also two pounds of sausage, of the kind known as frankfurters, paying for same 50 cents. Upon the return of this boy, the mother placed the frankfurters in hot water and boiled them until the casings on a portion of them burst, after which appellee, his mother and three brothers, ate of the sausage. Appellee and a brother, in the evening, attended a show. The brother testified neither of them ate anything while absent from home. Upon his return, appellee complained of stomach pains. He was ill the following day, and continued to grow worse until May 24, when a physician was called, who diagnosed the malady as trichinosis, a disease usually caused by eating raw pork which is infected with a parasite known as trichinae. Appellee was ill for several weeks. Another son was likewise afflicted with stomach pains the same evening after having eaten the sausage, but the other members of the family, who had partaken of it, do not appear to have been affected.

The mother testified that no other meat was served in the home on May 17, and that only bacon had been purchased during the preceding week, and that she did not know what kind of meat they had the following day, which was Sunday. Hatscher testified that the frankfurters in question (which came in a six-pound paper box), were purchased of appellant; that he sold the remainder of the contents of the carton, and that no one else complained of them.

Appellee, though in court, did not testify, and there is no evidence in the record as to whether he did or

did not, before the supper hour of May 17, eat meat at any place other than his home.

It is appellant's contention that the proof does not show that the meat eaten by Anthony Wiehardt was diseased, or that it caused his illness. The process of manufacture at the plant of the Krey Packing Company, during the month of May, 1930, was shown to be that frankfurters are composed of about one-fourth pork and three-fourths beef, chopped and mixed, stuffed into casings and linked; then put into a smoke-house for about an hour, where heat is applied to them from 140 to 175 degrees, after which they are removed and placed in a steam box, where they remain for a period of about 15 minutes, during which time they are sprayed with hot water, the temperature of which runs from 160 to 175 degrees, and which raises the temperature of the meat inside the sausage link to about 150 degrees, without bursting the casing, the purpose being to destroy any trichinae germs which may be in the pork, and which, the undisputed proof shows, are killed by the application, for a few minutes, of heat of the temperature of 137 degrees, all the heat degrees referred to being on the Fahrenheit scale.

At the steam box is a thermometer, with a three-inch dial, which can be read at a distance of 10 feet, and which registers the heat within the steam box, and in addition, a government inspector, before the meat is removed, generally makes a further test by inserting, in some of the pieces, an elongated, pencil-shaped and pointed thermometer, which penetrates the sausage link and discloses the temperature of the frank-furter; furthermore, that the meat is not removed until it has reached the required heat standard of 137 degrees, after which it is subjected to a cooling process, and packed for market.

The testimony of the government inspector in charge during May, 1930, as well as the employees of appel-

lant, shows that such practice was adhered to, and all such sausage remained in the steam box until every part had been heated to the degree which kills the trichinae parasite.

It is undisputed that the mother of appellee, before serving the frankfurters, boiled them in hot water, until some of the casings burst, and that water boils at 212 degrees Fahrenheit. As has been seen, the sausage, in its process of manufacture, was heated in the steam box until the inside of the link reached a temperature of 150 degrees, without causing the casings to burst. It is therefore evident that boiling in hot water, until the casings were broken, would heat the meat to a temperature much in excess of the 137 degrees, which, admittedly, destroys any trichinae germ in the pork content of the frankfurters.

Having averred the diseased state of the meat, at the time he ate of same, the appellee assumed the obligation of proving such fact by a preponderance of the evidence. The only proof in this record, bearing upon the condition of the frankfurters at the time they were eaten, tended to show that they had previously been subjected to such processes as would kill any trichinae parasites they might have contained. We do not think appellee has sustained the burden of proof upon this essential element.

The verdict, in our opinion, is contrary to the manifest weight of the evidence, and the trial court should have sustained appellant's motion for a new trial. *Belden v. Innis,* 84 Ill. 78.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*