ROBERT H. HOLT & another, executors, *vs.* GEORGE A. MANN.

Suffolk.    February 4, 1936. — February 28, 1936.

Present: RUGG, C.J., PIERCE, FIELD, LUMMUS, & QUA, JJ.

*Sale*, Warranty, Of food, Identity of purchaser. *Contract*, Parties. *Practice, Civil*, Requests, rulings and instructions. *Damages*.

Evidence that a retail dealer in meats, upon receiving from a married woman an order for a ham to be cooked and eaten by members of the household, selected a ham, delivered it to the home of the woman and her husband and charged it to the husband, warranted a finding that the husband was the buyer and that the implied warranty of fitness described in G. L. (Ter. Ed.) c. 106, § 17 (1), ran to him.

Under G. L. (Ter. Ed.) c. 106, § 17 (1), the sale and delivery of a ham by a retail dealer to a householder upon his order warranted findings that the ham was required for the purpose of domestic meals and that such purpose was impliedly made known to the dealer.

Under G. L. (Ter. Ed.) c. 106, § 17 (1), a householder's ordering a ham from a retail dealer and leaving its selection to him warranted a finding that the buyer relied upon the dealer's skill and judgment in selecting it.

Under G. L. (Ter. Ed.) c. 106, § 17 (1), on the sale by a retail dealer to a householder of a ham, selected by the retailer dealer, with knowledge that it was intended to be cooked and eaten, from hams prepared for sale to him by the usual methods of pickling, flavoring, smoking, and curing, there was an implied warranty by the dealer that it would be fit for food after ordinary domestic cooking; and, on evidence that it was infested with live trichinae after such cooking, a finding of a breach of the warranty was justified though the dealer had no knowledge of the unfitness and his lack of knowledge was not due to negligence on his part.

The impairment of one's ability to work might be considered an element in assessing damages for a personal injury even though a salary he was receiving before the injury continued to be paid in full.

The granting of a subdivided request for ruling, correct as a whole, was not error though one subdivision properly might have been denied as not applicable to the facts.

CONTRACT OR TORT, afterwards, by amendment, CONTRACT only. Writ in the Municipal Court of the City of Boston dated August 24, 1934.

The action was heard by *Donovan,* J., who found for the plaintiffs in the sum of $3,000. A report to the Appellate Division was ordered dismissed. The defendant appealed.

*A. L. Taylor,* (*E. S. Tyler* with him,) for the defendant.

*W. D. Lambert,* for the plaintiffs.

LUMMUS, J. This is an action of contract upon an implied warranty of fitness in the sale of half a ham by the defendant, a retail dealer in meats, to the plaintiffs' testator, Arthur C. Badger. The ham was ordered by his wife on September 23, 1933. It was selected by the defendant, delivered by him at the Badger house, and charged to Arthur C. Badger. The next day it was boiled for three hours or more, and then baked for an hour, in accordance with approved directions for cooking given in a well known cook book. Then it was served at noon. It appeared well cooked. All the persons, nine in number including Arthur C. Badger, who ate of the ham, became ill with trichinosis in varying degrees within a short period of time. Trichinosis is a disease caused by parasitic worms, not uncommon in pork products, which breed and multiply in the human system, and produce muscular swelling, pain and fever.

The ham in question had been prepared in Michigan for sale by the usual methods of pickling, flavoring, smoking and curing. It had been cooked in no other respect. It had been passed by Federal inspectors, and bore their stamp. There is no Federal inspection for trichinae, for no inspection could determine their presence or absence without destroying the product. Pork products are usually sold to be eaten only after cooking. The ham in question needed cooking, as both seller and buyer knew.

The trial judge found a breach of an implied warranty of fitness, resulting in personal injury to Arthur C. Badger. He found for the plaintiffs, and assessed damages in the sum of $3,000. A majority of the Appellate Division sustained the decision below, and the defendant appealed.

The sales act, G. L. (Ter. Ed.) c. 106, § 17 (1), provides that where "the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, whether he be the grower or manufacturer or not, there is an implied warranty that the goods shall be reasonably fit for such purpose." It is unnecessary to consider the earlier law reviewed in *Farrell v. Manhattan Market Co.* 198 Mass. 271.

It could have been found that Arthur C. Badger was the buyer of the ham, and that the warranty ran to him. *Blanchard v. Kronick,* 277 Mass. 31. *Gearing v. Berkson,* 223 Mass. 257. *Groce v. First National Stores Inc.* 268 Mass. 210. *Cleary v. First National Stores Inc.* 291 Mass. 172, 175.

Where a householder orders from a retail dealer in meats a ham to be delivered at the house, — to say nothing of the fact that in the present case the seller and buyer had traded together for forty years — a finding that the ham is required for the purpose of domestic meals, and that such purpose is impliedly made known to the dealer, is as easy as a finding that one who orders a meal in a restaurant intends to eat it (*Smith v. Gerrish,* 256 Mass. 183, 186), that a retail buyer of chewing tobacco intends to chew it (*Weiner v. D. A. Schulte, Inc.* 275 Mass. 379, 382, 383), that a retail buyer of clothing intends to wear it (*Flynn v. Bedell Co. of Massachusetts,* 242 Mass. 450, 452, 453), that a retail buyer of cold cream intends to use it on the skin (*Ireland v. Louis K. Liggett Co.* 243 Mass. 243, 246), that a wholesaler buying a lot of candy intends to resell it (*Parker v. S. G. Shaghalian & Co. Inc.* 244 Mass. 19, 21), that a tanner buying skins intends to tan them (*Agoos Kid Co. Inc. v. Blumenthal Import Corp.* 282 Mass. 1, 11, 12), or that a manufacturer of beverages buying sugar intends to use it in his product (*Country Club Soda Co. Inc. v. Arbuckle,* 279 Mass. 121, 127), and a further finding in each instance that the intention of the buyer is made known to the seller. *Ward v. Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 92. *Groce v. First National Stores Inc.* 268

Mass. 210. *Cleary* v. *First National Stores Inc.* 291 Mass. 172. *Rinaldi* v. *Mohican Co.* 225 N. Y. 70.

There was evidence that the buyer relied on the seller's skill and judgment in selecting the ham. *Rinaldi* v. *Mohican Co.* 225 N. Y. 70. In the present case the buyer had no opportunity to make a selection. The seller knew the sources of his goods, and had some judgment of their quality. The fact that the presence or absence of trichinae cannot be determined by any practicable test does not negative reliance on the seller's skill or judgment, any more than did the impossibility of learning before opening, the contents of a can of beans in *Ward* v. *Great Atlantic & Pacific Tea Co.* 231 Mass. 90, 93, of a jar of cold cream in *Ireland* v. *Louis K. Liggett Co.* 243 Mass. 243, 247, or of a plug of tobacco in *Weiner* v. *D. A. Schulte, Inc.* 275 Mass. 379. Neither knowledge of unfitness, nor negligence, on the part of the seller, is required in an action on an implied warranty of fitness. This is reinforced in the case at bar by G. L. (Ter. Ed.) c. 94, § 150, making it a criminal offence to sell for food diseased or unwholesome unpacked meat without disclosing the condition to the buyer. The need of proving the scienter under this statute (*Hemmenway* v. *Woods*, 1 Pick. 524), was removed by St. 1913, c. 687.

Not only was there evidence of an implied warranty of fitness for food, but there was evidence of a breach of that warranty. The warranty in the present case was not that the food was fit to eat without cooking, but that it was fit to eat after ordinary domestic cooking. *Gearing* v. *Berkson*, 223 Mass. 257. *Hawkins* v. *Jamrog*, 277 Mass. 540. *Jamrog* v. *H. L. Handy Co.* 284 Mass. 195. *Rinaldi* v. *Mohican Co.* 225 N. Y. 70. There was evidence that the ham contained trichinae. Some were found dead in a piece of it that was thoroughly cooked. All who ate the ham contracted trichinosis. The bacon eaten by the family for breakfast was apparently not the cause of the illness, for one of the family who ate none of it nevertheless became ill after eating the ham. It is true, according to the evidence, that trichinae are killed by exposure to heat of one hundred thirty-seven degrees Fahrenheit. But in

ordinary household cooking it is not easy to be sure that every part of a ham will be heated to so high a degree. It could have been found that the ham was cooked as thoroughly as could be expected in a family, but without killing trichinae with which it was infested. The ham could have been found not "reasonably fit" for the purpose for which it was bought.

The defendant does not argue that there was not seasonable notice of the breach of warranty, within G. L. (Ter. Ed.) c. 106, § 38. *Smith* v. *Denholm & McKay Co.* 288 Mass. 234, 241. Compare *Kennedy* v. *F. W. Woolworth Co.* 205 App. Div. (N. Y.) 648.

It could have been found that the breach of warranty resulted in personal injury to Arthur C. Badger. It is true, according to the evidence, that symptoms of trichinosis did not appear in his case until September 30, 1933, which was beyond the usual time. But the report says that "the symptoms of the disease are by no means constant and in light cases the various stages of the disease are not clear." The fact that Arthur C. Badger suffered from arteriosclerosis and angina pectoris made it difficult to distinguish the consequences of the trichinosis, but that there were such consequences could be found on the evidence. A post mortem examination of the body of Arthur C. Badger on June 1, 1934, disclosed trichinosis estimated by an expert to be of from six months to one year in duration. The case does not fall within *Monahan* v. *Economy Grocery Stores Corp.* 282 Mass. 548, where the illness could not be traced to the food. The requests for rulings presented by the defendant, so far as argued, are covered by what has been said.

The defendant contends that there was error in the granting of the following ruling requested by the plaintiffs: "Damages for which plaintiff[s] may recover include (a) Loss or diminution of deceased's ability to work and earning capacity. (b) Medical expense incurred. (c) Nursing. (d) Pain and suffering." The argument is, that although as an abstract proposition the ruling was correct, the judge probably awarded something for diminution of

earning capacity although the deceased drew his full salary as long as he lived. The part of the ruling objected to is a fragment of one subdivision of a general statement of the elements of damages to be considered. That subdivision mentioned both "ability to work" and "earning capacity." The impairment of one's ability to work might be considered in assessing damages even though his salary continued to be paid. If the defendant wished to raise the point that on the evidence no damages could be awarded for diminution of earning capacity, he should have asked a ruling to that effect. The granting of the general ruling in question did not amount to a ruling that in the present case some damages had to be assessed for every subdivision of the ruling, and every fragment of every subdivision. Neither does a report of such a ruling raise every minute question that may be discovered in any part of it. For all that appears, the attack now made on the ruling may be an afterthought. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108. We find no error entitling the defendant to a new trial.

*Order dismissing report affirmed.*