Zimmerman, J.
 

 Under the evidence in this case there can be no question that plaintiff’s decedent died as a result of contracting trichinosis. This disease is acquired by human beings when they eat meat, especially pork, raw or insufficiently cooked, containing larvae denoted as trichinellae. Whether such trichinosis was caused by eating the metwurst purchased from defendant was undoubtedly a question of fact.
 

 
 *640
 
 On this appeal the defendant asserts that he was entitled to judgment as a matter of law; that the Ohio statutes against selling unwholesome, adulterated or diseased food do not apply to this case; that there was error in connection with the giving of special instructions requested by plaintiff, and in refusing to give special instructions submitted by the defendant; and that there was error in the general charge.
 

 Three sections of the Ohio statutes relating to foods and their sale are involved in this case. Section 12760, General Code, provides:
 

 “Whoever sells, offers for sale or has in possession, with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both. ’ ’
 

 Section 5774, General Code, reads:
 

 “No person, within this state, shall manufacture for sale, offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated * * V’
 

 Section 5778, General Code, recites:
 

 “Food, drink, confectionery or condiments are adulterated within the meaning of this chapter * * * (5) if it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal * *
 

 This court has held that Section 12760, General Code, was enacted for the protection of the public and that the sale of unwholesome or corrupted provisions in violation of it, is negligence
 
 per se. Portage Markets Co.
 
 v.
 
 George,
 
 111 Ohio St., 775, 146 N. E., 283;
 
 Great Atlantic & Pacific Tea Co.
 
 v.
 
 Hughes,
 
 131 Ohio St., 501, 3 N. E. (2d), 415;
 
 Rubbo
 
 v.
 
 Hughes Provision Co.,
 
 138 Ohio St., 178, 34 N. E. (2d), 202. See, also,
 
 Hunter
 
 v.
 
 Derby Foods, Inc.
 
 (C. C. A. 2.), 110 F. (2d), 970.
 

 
 *641
 
 Under the quoted statutes, a violation may occur even though the seller has no.knowledge that the food he is selling is contaminated. See
 
 Gannt
 
 v.
 
 Columbia Coca Cola Bottling Co.,
 
 193 S. C., 51, 7 S. E. (2d), 641, 127 A. L. R., 1185.
 

 Thus, the United States Circuit Court of Appeals for the Sixth Circuit held in the case of
 
 Troietto
 
 v.
 
 G. H. Hammond Co.,
 
 110 F. (2d), 135, that pork infected with trichinellae spiralis is diseased within the meaning of the Ohio pure food laws, and the sale of such pork even where the seller does not know that it is diseased or infected, violates the law and renders the seller negligent
 
 per se.
 

 We think this case has correctly interpreted the statutes of Ohio, and therefore plaintiff’s special instructions and the general charge in accord therewith were proper.
 

 If the present laws of Ohio covering the sale of contaminated, adulterated or unwholesome food are too severe against the seller and should be modified, the remedy lies with the General Assembly.
 

 Does the evidence show contributory negligence as a matter of law on the part of plaintiff’s decedent? Upon cross-examination the defendant, an aged man of German birth, testified as to the manner in which metwurst is made. Fresh pork shoulders and bams are cut into small pieces and run through a grinder. Spices are then added and the mixture is put into casings. The product is smoked from one to two days and is then ready for sale. The'meat going into the metwurst is never cooked.
 

 The defendant further testified that to his knowledge metwurst may be cooked but is also eaten, as a common practice, just as it comes from the butcher shop. Plaintiff’s decedent and his family, according to the evidence, had eaten metwurst prepared by the defendant over a period of years, without cooking and
 
 *642
 
 without harm. There is nothing in the bill of exceptions to indicate that plaintiff’s decedent knew the ingredients of the metwurst or had any knowledge of just how it was prepared.
 

 The only evidence which can fairly be said to point to contributory negligence was that decedent's mother-in-law had advised him to cook the metwurst before eating it. It is plain from the evidence that defendant and his family ate the metwurst without cooking and that it was so consumed by many people.
 

 Under all the evidence, we are of the opinion that contributory negligence was a question of fact and was properly submitted to the jury. Had decedent eaten.the raw shoulder or ham of pork as it came from a slaughtered animal, a different conclusion as to contributory negligence might be required.
 

 There was no reversible error in refusing the two special instructions requested by the defendant. They were objectionable because they required the jury to find facts not contained in the evidence. No evidence was introduced that decedent knew the spiced and seasoned meat in the metwurst was pork; that such meat had not been treated or processed so as to destroy parasites; or that such pork was infected with trichinellae.
 

 Finding no prejudicial error in the judgment of the Court of Appeals, that judgment is affirmed.
 

 Judgment affirmed.
 

 Wkygandt, C. J., Matthias, Hart, Bell and Turner, JJ., concur.