Rose Nicketta, Minor by her father and next friend, Charles Nicketta et al., Appellants, v. National Tea Company, Appellee.

Gen. No. 44,689.

Opinion filed June 29, 1949.   Released for publication July 18, 1949.

LEWIS L. ROOT, of Chicago, for appellants; M. S. MILLER and C. D. SNEWIND, both of Chicago, of counsel.

DAVID & FAINMAN, of Chicago, for appellee; SIGMUND W. DAVID and KALMAN S. LIEBERMAN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court.

In an amended complaint filed in the circuit court of Cook county by Rose Nicketta, a minor, Charles Nicketta, Frances Nicketta and Marie Nicketta against National Tea Company, they alleged that Frances Nicketta purchased from defendant, a retail meat dealer, fresh pork for domestic use and consumption by her and her family; that there existed an implied warranty that the pork, after *proper* cooking, would be fit, wholesome and proper for human consumption; that the pork was properly cooked and then consumed by plaintiffs; and that after consuming the pork they became infested with a disease known as trichinosis. Plaintiffs demanded a jury trial.   Defendant filed a motion under sec. 45 of the Civil Practice Act [Ill. Rev. Stat. 1947, ch. 110, par. 169; Jones Ill. Stats. Ann. 104.045] to dismiss and asserted that the court would take judicial notice that a human being cannot contract or get the illness or disease known as trichinosis from eating pork which has been properly cooked.   The

court heard the arguments of counsel and, being fully advised in the premises, found that "it is a well established and irrefutable scientific fact, of which this court will take judicial notice, that a human being cannot contract or get the illness or disease known as trichinosis from eating pork which has been properly cooked." Thereupon, the court sustained the motion to dismiss and entered judgment against plaintiffs. Plaintiffs filed a written motion to vacate the judgment. This motion, among other things, states that it is held by "competent medical authority that it is possible to contract trichinosis from pork after it has been cooked." The court denied plaintiffs' motion to vacate the judgment. Plaintiffs appeal from the judgment and order denying their motion to vacate.

As their theory of the case, plaintiffs say that they "cannot subscribe to the uncertain and non-established hypothesis that the parasite trichinae spirilla which produces trichinosis are under all circumstances and under all conditions permanently destroyed when pork is well cooked, particularly when the organism is encysted in its calcified capsule during its sporatic state"; that assuming, but in no sense admitting the scientific truth of defendant's theory, that the proposition is not one of "common every day knowledge which one of average intelligence and a knowledge of things about him can be presumed to know" and that the proposition is neither certain nor indisputable; that judicial knowledge is a part of the law of evidence and that all matters except those of which the court is required to take judicial notice by statute can be rebutted by competent evidence; that the doctrine cannot be invoked on pleadings alone; and that the action of the court in taking judicial notice of a disputed question of fact deprived them of a jury trial. In 31 C.J.S., page 519, it is said:

"Proof is not required of facts of which the court takes judicial notice. The doctrine of judicial notice

is based on convenience and expediency, and to say that a court will take judicial notice of a fact is merely another way of saying that the usual forms of evidence will be dispensed with if knowledge of the fact can be otherwise acquired. Judicial knowledge is not reached by the use of evidence; it is a matter pertaining to the judicial function and its existence, like that of an admission, stipulation, or rule of presumption, dispenses with evidence as to the point covered. Facts judicially noticed are thereby presented to the court as effectually as though they had been established by proper proof, and are of equal force, and it has been held that as a means of establishing facts judicial notice is superior to evidence.''

If the matter falls within the domain of judicial knowledge, it is beyond the realm of dispute; therefore, evidence is unnecessary. It is the judge's function to decide whether a matter is a subject of evidence or of judicial notice. The judge should be free to make for himself such investigation as he desires, but he should also be able to call upon the parties for assistance. In a few cases it is said that the judge should have received evidence offered to show the opposite of what he declared to be a judicially noticed fact. What is meant is that the subject did not fall within the realm of judicial notice. American Law Institute, Model Code of Evidence, Ch. 9, comment on Paragraphs (2) and (3) of Rule 804. A trial court will take judicial notice of many things, such as the statutes of the United States and the States, well established and well known historical and scientific facts and matters of common knowledge which it would be senseless to make a litigant prove or to permit him to prove. The courts will take judicial notice of scientific facts which have been well established by authoritative scientists and are generally accepted as irrefutable by living scientists. Plaintiffs suggest that because science is pro-

gressive and new discoveries are constantly being made, no scientific fact however well established should be taken judicial notice of. It is an authoritatively established fact that water is composed of two parts of hydrogen and one part oxygen. Some day a scientist may prove that there is another element in water not known at present. If the claim that a well established scientific fact such as the constituent parts of water is not true, or that one hundred years from now it may be refuted, would be sufficient reason for preventing a court from taking judicial notice of that scientific fact, then a court could never take judicial notice of a scientific fact. There are innumerable cases in which courts have taken judicial notice of scientific facts. See *Fligelman v. City of Chicago,* 348 Ill. 294, 200; *National Ice & Fuel Co. v. Industrial Commission,* 387 Ill. 31; *People ex rel. Schutz v. Thompson,* 325 Ill. App. 95, 102; *Pearcey v. St. Paul Fire & Marine Ins. Co.,* 163 Va. 928, 177 S. E. 843; *Matter of Madura v. City of New York,* 238 N. Y. 214, 144 N. E. 505; *Tonkovich v. Department of Labor* (Wash.), 195 P. (2d) 638; and *VanPelt v. United States,* 134 F. (2d) 735.

That the court will apply the doctrine of judicial notice to pleadings, has long been settled. The principle is identical, whether by taking judicial notice the court supplies an essential fact omitted from a pleading, or disregards a fact alleged in the pleading because it is contrary to a fact of which the court takes judicial notice. See *Lindelsee v. Chicago, O. & P. Ry. Co.,* 226 Ill. App. 20, 23; *Horn v. Illinois Cent. R. Co.,* 327 Ill. App. 498, 503; and *Pierce Oil Corp. v. City of Hope,* 248 U. S. 498, 63 L. Ed. 381. In 49 C. J., it is said, page 36:

"Facts of which the court will take judicial notice need not be alleged, and the courts must read a pleading as if it contained a statement of such facts, even when there is an express allegation to the contrary."

On page 440 of the same volume, the author says:

"A demurrer does not admit facts which the court will take judicial notice are not true, . . . ."

We agree with plaintiffs that the court should not take judicial notice of unproved scientific theories. The trial judge, however, was not dealing with something that was unproved or a scientific theory. He was dealing with an authoritatively proved scientific fact, established and accepted for many years. He was dealing with an ordinary biological, bacteriological or zoological fact established by countless tests and accepted beyond dispute and irrefutable by the United States Government, scientists, physicians and the courts.

Scientific facts do not have to be matters of common knowledge, as the plaintiffs use the term. They do not have to be known to all the people in the locality. The speed of light and of sound of which judicial notice was taken in *Pearcey v. St. Paul Fire & Marine Ins. Co.,* *supra,* is not known to all the people of the United States, or even to most. Well established and well authenticated scientific facts are not matters of common knowledge in the sense that every person in the United States knows them. We assume that the trial judge informed himself of the well established and irrefutable scientific fact that a human being could not acquire trichinosis from eating pork which had been properly cooked. Defendant made this information available to the court. Plaintiffs filed no affidavit, or referred the trial court or this court to any scientist, physician, book, article, tests or other authority which would establish or tend to establish that a human being can acquire trichinosis from eating pork which has been properly cooked. In their motion to vacate the judgment plaintiffs assert that it is "held by competent medical authority that it is possible to contract trichinosis from pork after it has been cooked." It was not asserted by plaintiffs that competent medical

or scientific authority holds or had ever held or stated that it is possible to contract trichinosis from eating pork after it has been *properly cooked*. Competent medical authority would support plaintiffs' statement that it is possible to contract trichinosis from pork which has been cooked. The fact that competent medical authority would testify that a human being could contract trichinosis by eating pork after it has been cooked does not prove or tend to prove that it is not a well established and irrefutable scientific fact that a human being cannot contract trichinosis from eating pork which has been properly cooked.

We have read certain documents published under the authority of the United States Government and statements of scientific and medical authorities. These were cited to us by defendant. Plaintiffs have not cited any authorities to the contrary. From these we take judicial notice of the fact that human beings contract or acquire trichinosis in only one way: eating pork containing live trichinae. The United States does not inspect fresh pork to determine whether it contains trichinae, because there is no known feasible method of inspection. If, before a human being eats pork the trichinae in it are killed, a human being cannot contract trichinosis from eating pork. Proper cooking of fresh pork kills the live trichinae. This is a scientific fact which has been authoritatively established for many years, is well known, has never been refuted and has never been questioned. It has been pronounced as an established scientific fact by the United States Government, the American Medical Association, physicians, zoologists, bacteriologists, biologists and other scientists and by many courts. See Leaflet No. 34 of the United States Department of Agriculture, originally issued in May, 1929, and since slightly revised, entitled "Trichinosis, A Disease Caused by Eating Raw Pork"; pamphlet known as series A. I. 39 of the United States Department of Agriculture, Bureau of

Animal Industry, entitled "Cook Pork and Its Products Thoroughly"; and Regulations Governing the Meat Inspection of the United States Department of Agriculture, Edition of January 1947, which prescribes the methods of treating pork and products containing pork to destroy trichinae. The regulation does not require the treatment of such products as are customarily well cooked in the home or elsewhere before being served to the consumer. As to such products not customarily cooked in the home and elsewhere before being served to the consumer, the regulations prescribe that the treatment shall consist of heating, refrigerating or curing. When the treatment is by heating, the regulations require that "all parts of the pork muscle tissue shall be heated to a temperature not lower than 137° F., and the method used shall be one known to insure such a result." Report 16, volume 52, dated April 16, 1937, of "Public Health Reports," issued by the United States Public Health Service, is a lengthy pamphlet, almost all of which is devoted to the subject of trichinosis. A footnote on page 488 says:

"The fact that trichinosis is common in the United States is not a reason for not eating pork, but is a reason for cooking it well. Precautions in preparing foods for use are not confined to pork or to the United States but are common to many foods and to all civilized countries. . . . There is no danger of acquiring trichinosis when proper care is used in the cooking of pork and pork products . . . ."

In the annual report of the Smithsonian Institute for the year ending June 1939, is a chapter on trichinosis in which it is said, page 428:

"As a result . . . the establishment by Ransom and Schwartz, that the thermal death point of trichinae is 131° F., (137° F. for official purposes) . . . . Since, as already stated, trichinosis and nonclinical trichina infections in human beings in this country are

due to the consumption of raw or inadequately cooked or cured meat food products containing pork muscle tissue, . . . .''

In a Report on Trichinosis and Nonclinical Infections With Trichinella Spiralis, prepared by a special committee appointed by R. C. Pollock, Chicago, Chairman Advisory Council on Livestock and Meat Research, and printed in the Journal of the American Medical Association for January 6, 1940, it is stated:

''It has been established that a minimum temperature of 137° F. in every part of the pork being cooked will destroy all trichinella larvae. Fresh pork which is pink has not reached a sufficiently high temperature and should not be eaten without further cooking.''

In the book on trichinosis by Gould, published in 1945 by Charles C. Thomas, Springfield, Illinois, there is said in Chapter XIII on Cooking, that ''Ransom and Schwartz (1919) place the thermal death point for trichinae at 131° F., and for official purposes at 137° F. Ordinary cooking destroys the parasite, but it is essential that the meat be cooked sufficiently in proportion to its weight to insure that the heat will penetrate to the center and raise the temperature of all parts to at least 137° F.'' The American Mercury for October 1940 contains an article entitled ''Pork Disease, A National Menace,'' by Thomas C. Desmond, Chairman, New York State Trichinosis Commission, which says in part:

''. . . Trichinosis can be prevented. . . . As individuals, you and I can protect ourselves from the miscroscopic pork parasite by adhering to a simple rule: *Don't* eat pork or pork products unless they are thoroughly cooked. How can we be certain that the meat has been sufficiently heated? Simply by remembering that the color tells. When fresh meat is heated to a temperature of 163 degrees Fahrenheit, it loses entirely its pink or blood red color and turns gray or

bleached in appearance. Trichinae are destroyed by 137 degrees of heat . . . ."

The following cases involve actions on account of acquiring or becoming infested with trichinosis: *Zorger v. Hillman's,* 287 Ill. App. 357, where we held that the warranty, if any, was that pork is fit for food when properly cooked; *Wiehardt v. Krey Packing Co.,* 264 Ill. App. 504; *Feinstein v. Daniel Reeves, Inc.,* 14 F. Supp. 167; *Tavani v. Swift & Co.,* 262 Pa. 184, 105 Atl. 55; *Prinsen v. Russos,* 194 Wis. 142, 215 N. W. 905; and *Cheli v. Cudahy Bros. Co.,* 267 Mich. 690, 255 N. W. 414. What is significant in the trichinosis cases is that no plaintiff has recovered in any of them who claims he bought from a retailer, that there was an implied warranty that the pork was fit for human consumption when properly cooked, and that the pork was properly cooked. Most significant is the fact that there is no case in all of the many cases involving trichinosis where any litigant offered to produce a scientist or a doctor to testify, or where any scientist or doctor testified that it was possible for a human being to acquire or become infested with trichinosis from eating pork which had been properly cooked. Plaintiffs allege that the only obligation which exists between a purchaser of fresh pork and a retail seller is that there is an implied warranty that the pork will be fit, wholesome and proper for human consumption after proper cooking. They also allege that they purchased the pork from the defendant; that it was properly cooked; that they ate it; and that they acquired or became infested with trichinosis. They alleged a factual impossibility, a fact irrefutable by a well established scientific rule, of which it was the duty of the trial court to take judicial notice, namely, that a human being cannot acquire trichinosis from eating pork which has been properly cooked.

We are satisfied that the trial court was right in sustaining defendant's motion and in entering judg-

ment against plaintiffs. Therefore, the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

KILEY and LEWE, JJ., concur.