SIDNEY SILVERMAN ET AL. *v.* SWIFT AND COMPANY ET AL.

INGLIS, C. J., BALDWIN, O'SULLIVAN, WYNNE and DALY, Js.

Argued June 3—decided July 13, 1954

*Louise Untermyer Wit,* with whom were *Morris B. Straka* and, on the brief, *James F. Rosen,* for the appellants (plaintiffs).

*Martin E. Gormley,* for the appellees (defendants George and Wihbey).

BALDWIN, J. The plaintiffs Sidney Silverman and John and Rose Groopman brought suit against the defendant Swift and Company, an Illinois corporation, and the defendants Tofie A. George, John J. George and John G. Wihbey, partners doing business under the name of George's Market at Watertown, Connecticut. The plaintiffs alleged negligence and breach of warranty in the sale to the plaintiff Rose Groopman and to Alice Silverman, wife of the plain-

tiff Silverman, of a loin of pork infected with trichinae parasites, as a result of which all the plaintiffs contracted trichinosis. The trial court rendered judgment for the defendants. The plaintiffs have appealed from the judgment in so far as it concerns the defendant partners, hereinafter referred to as the defendant. The assignments of error pursued in the brief pertain only to a claimed right of recovery on the ground of breach of an implied warranty.

At the outset, we call attention to the allegation of the complaint stating that the plaintiffs gave due notice of the breach of warranty to all the defendants. There is, however, no finding that they did so. This alone could be fatal to their cause, because proof of notice of a breach of warranty is a condition precedent to recovery on that ground. General Statutes § 6664; *DeLucia* v. *Coca-Cola Bottling Co.,* 139 Conn. 65, 67, 89 A.2d 749. It does not appear, however, that a claim of lack of notice was presented in the trial court, and we shall consider the case upon the issues presented there and raised on this appeal.

The subordinate facts found by the trial court have not been challenged. On August 20, 1949, Sidney Silverman and his wife Alice, with Dr. John Groopman and his wife Rose, drove to the Groopman farm in Copake, New York, to spend the day. They stopped on the way at George's Market, where they purchased a loin of fresh, raw pork weighing about five pounds. Upon arrival at the farm they put the meat on a spit in an outdoor open fireplace and cooked it over a wood fire for a period which they estimated to be four to four and a quarter hours. Dr. Groopman was a physician and was aware that roast pork might contain trichinae parasites, which, if present, could be rendered harmless only by ade-

quately cooking the pork before it was eaten. The loin, when removed from the spit, appeared on casual inspection to be charred and black on the outside and grayish white on the inside. It is a scientific fact, demonstrated by many tests, that heat of 137 degrees Fahrenheit, when it reaches a cell of raw, fresh pork, will instantaneously kill any trichinae in it. Although the meat appeared to be adequately cooked, the method used to cook it was ill-advised and not adapted to allow heat at the requisite temperature of 137 degrees to permeate all of it thoroughly. Dr. and Mrs. Groopman had on previous occasions prepared and cooked pork in this manner and had eaten it with no ill effects. Silverman had not eaten pork before and his wife Alice ate none on this occasion. The plaintiffs contracted trichinosis with serious and debilitating results. The method used for cooking the pork was not a proper one. Due care was not exercised to destroy the trichinae in it. Not all of the loin eaten by the plaintiffs had been subjected to a temperature of at least 137 degrees. Raw pork cannot be examined for trichinae by a packer or seller by any known and practical method and thereafter be merchantable and fit for use. The federal government conducts no inspection for trichinae in pork.

From these facts the trial court concluded (1) that there was an implied warranty by the defendant that the pork sold to the plaintiffs was fit for food provided it was properly cooked and the ordinary, commonly used precautions prevailing among the general public in the preparation of fresh pork for human food were observed, and (2) that there was no implied warranty as to the fitness for food of pork in a raw or improperly cooked state. The plaintiffs claim that the trial court erred in reaching these conclusions.

Actions to recover damages for the sale of pork products infected with trichinae parasites have come before the courts in many cases. It is usual in such a case for the plaintiff to sue both in negligence and for breach of warranty. See 22 Am. Jur. 878, 880. We emphasize at the outset of this discussion that the instant case is before us for consideration on the sole ground of breach of warranty and that the pork purchased was a fresh, raw loin. General Statutes, § 6630, provides that there is an implied warranty in the sale of goods sold for a particular purpose: "When the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment, . . . there is an implied warranty that the goods shall be reasonably fit for such purpose, and such warranty shall extend to all members of the buyer's household. . . ." There is practical unanimity of modern authority that, both under the common law and the Sales Act, upon the sale of food to be immediately put to domestic uses, there is, as between the dealer and the buyer-consumer, an implied warranty of wholesomeness and fitness to be eaten, including freedom from foreign substances which may be injurious to the consumer. *Burkhardt* v. *Armour & Co.*, 115 Conn. 249, 259, 161 A. 385; *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 95, 3 A.2d 224; see *Naumann* v. *Wehle Brewing Co.*, 127 Conn. 44, 47, 15 A.2d 181; *Sapiente* v. *Waltuch*, 127 Conn. 224, 226, 15 A.2d 417. The crucial question is whether this rule applies under the facts presented by the case at bar.

There was no need for the plaintiffs to make known to the defendant that the pork purchased was for food. That can be implied. *Baum* v. *Murray*,

23 Wash. 2d 890, 897, 162 P.2d 801; *Farrell* v. *Manhattan Market Co.*, 198 Mass. 271, 279, 84 N.E. 481; 22 Am. Jur. 880. It does not appear that the plaintiffs expressly relied upon the skill or judgment of the defendant in selecting this loin of pork. But the plaintiffs were entitled to assume that the defendant would not knowingly sell food that was not edible. *Rinaldi* v. *Mohican Co.*, 225 N.Y. 70, 74, 121 N.E. 471. The trial court has found that there is no known and approved method for determining the presence of trichinae in a loin of pork which is to be sold. In that respect the court accepted what has come to be an acknowledged fact. *Nicketta* v. *National Tea Co.*, 338 Ill. App. 159, 165, 87 N.E.2d 30; *Zorger* v. *Hillman's*, 287 Ill. App. 357, 359, 4 N.E.2d 900; *Cheli* v. *Cudahy Bros. Co.*, 267 Mich. 690, 693, 255 N.W. 414. The defendant, therefore, could not have known that the pork which it sold to the plaintiffs was infected. Moreover, it cannot in reason be claimed that the defendant would expect that the plaintiffs would eat the pork without cooking it. *Cheli* v. *Cudahy Bros. Co.*, supra, 696; *Dressler* v. *Merkel, Inc.*, 247 App. Div. 300, 302, 284 N.Y.S. 697.

We come, then, to a consideration of the nature and extent of the implied warranty in the sale of raw pork. In *Holt* v. *Mann*, 294 Mass. 21, 200 N.E. 403, the plaintiff housewife purchased a ham which had been prepared by the packer in the usual manner of pickling, flavoring, smoking and curing. She boiled it for three hours or more and then baked it another hour. Her husband ate it and contracted trichinosis. The court held (p. 24): "The warranty . . . was not that the food was fit to eat without cooking, but that it was fit to eat after ordinary domestic cooking." This rule has been followed in Illinois; *Zorger* v. *Hillman's*, supra, 360, and *Nicket-*

*ta* v. *National Tea Co.*, supra, 168; in Michigan; *Cheli* v. *Cudahy Bros. Co.*, supra, 696; in Maryland; *Vaccarino* v. *Cozzubo,* 181 Md. 614, 620, 31 A.2d 316; and in Canada. *Yachetti* v. *John Duff & Sons Ltd.*, [1943] 1 D.L.R. 194, 202, [1942] O.R. 682; 1 Williston, Sales (Rev. Ed.) p. 644. The Court of Appeals of New York has held, in a four to three decision, that there is an implied warranty of wholesomeness and fitness in the sale of fresh, raw pork. *McSpedon* v. *Kunz,* 271 N.Y. 131, 137, 2 N.E.2d 513. The minority opinion points out (p. 140) that there was no finding that the pork was cooked as thoroughly as could be expected, without which there was no basis for a conclusion that there had been a breach of an implied warranty. In *Eisenbach* v. *Gimbel Bros., Inc.,* 281 N.Y. 474, 24 N.E.2d 131, the plaintiffs brought suit for breach of warranty, claiming damages resulting from eating trichinae-infected pork in Gimbel's restaurant. The defendant, under the New York Practice Act, impleaded the wholesaler from whom it had purchased the pork, and the wholesaler impleaded its vendor. The court charged the jury that if they found for the plaintiff they were likewise to return a verdict for the defendant against the wholesaler, and for the wholesaler against its vendor. In a unanimous opinion, the court observed (p. 478) that it was the trial court's opinion "that these successive consequences of Gimbel's liability to the plaintiff were dictated by our decision in *McSpedon* v. *Kunz* (271 N.Y. 131)," and pointed out that in the *McSpedon* case the plaintiff housewife knew nothing about the degree of heat required to kill trichinae, or about trichinae, whereas Gimbel's chef, after more than twenty-five years' experience, did know about such things. The court held that, although the plaintiff could recover from

Gimbel's because of its failure to exercise due care in cooking the pork, Gimbel's could not recover from the wholesaler, or the wholesaler from its vendor. This appears to be an application of the doctrine of contributory negligence in an action of contract. However, the point is that the implied warranty of fitness would be available only to one who had used due care in preparing raw pork by cooking.

Obviously, the Massachusetts rule heretofore stated would not apply to pork products which are prepared to be eaten without cooking and are then sold to the consumer. *Vaccarezza* v. *Sanguinetti,* 71 Cal. App. 2d 687, 689, 163 P.2d 470; *Baum* v. *Murray,* 23 Wash. 2d 890, 899, 162 P.2d 801.

The implied warranty stated in § 6630 is that "the goods shall be reasonably fit" for the purpose for which they were purchased. Many foods cannot be eaten in the state they are in when bought. They are then "reasonably fit" for ingestion in the sense that they require the usual and proper preparation. The purpose for which they were bought is to prepare and eat them. One could not expect to recover upon breach of warranty for the distressing effects which would follow the eating of pineapples without peeling them, or of a partially cooked chicken which had not been drawn. The rule applies only when the food is used in the usual, rather than in an unusual, manner. *Cheli* v. *Cudahy Bros. Co.,* 267 Mich. 690, 697, 255 N.W. 414; 77 C.J.S. 1213. The possibility of danger from disease inherent in raw pork is a matter of ancient and general knowledge. The hog, as food, has always been regarded with reservations. And yet pork products of all kinds have become a staple food among most peoples. The Massachusetts rule and that followed in a majority of states where the precise question has arisen, as it applies to an

action for breach of warranty in the sale of pork, appeals to us as being reasonable and sound. The implied warranty that goes with a sale of raw pork is that it is fit for eating only after it has been cooked with the commonly used precautions prevailing among the general public.

The plaintiffs advance the claim that there was no basis for the conclusion of the trial court that a faulty or improper method was used in preparing the loin of pork from which they contracted trichinosis. One of the subordinate facts found by the trial court was that "[t]he open wood fire under a spit used for cooking ... was not the proper way to cook a chunk of raw, fresh pork of the size here used." This finding has not been questioned. We have no way of knowing on the record what evidence there was to support it. Standing unchallenged, it is sufficient to sustain the conclusion attacked by the plaintiffs. Furthermore, it is a scientific fact, as found by the court, that trichinae parasites are microscopic in size, that they are apt to be found in any cell or cells of the flesh of the hog, and that when they are subjected, even momentarily, to a temperature of 137 degrees Fahrenheit they are rendered harmless. The necessity for cooking raw pork thoroughly is a fact so well known that the court could take judicial notice of it. Courts can take judicial notice of matters of common knowledge. *Walcott* v. *Skilton,* 139 Conn. 424, 426, 94 A.2d 792; *Farkas* v. *Halliwell,* 136 Conn. 440, 446, 72 A.2d 648; *Waters-Pierce Oil Co.* v. *Deselms,* 212 U.S. 159, 175, 29 S. Ct. 270, 53 L. Ed. 453; *Friend* v. *Burnham & Morrill Co.,* 55 F.2d 150, 151; *Barton Savings Bank & Trust Co.* v. *Hamblett,* 107 Vt. 311, 314, 178 A. 900; 9 Wigmore, Evidence (3d Ed.) § 2580. The court was warranted in concluding that the plaintiffs, in doing

what they did, failed to follow the commonly used precautions prevailing among the general public.

The view we take of the case makes it unnecessary to consider whether all the plaintiffs were parties or privies to the claimed warranty so that each individually could sue upon it. See *Borucki* v. *MacKenzie Bros. Co.*, 125 Conn. 92, 95, 3 A.2d 224.

There is no error.

In this opinion the other judges concurred.