## Clouser v. Shamokin Packing Co.

*Lester L. Greevy, Jr.*, for plaintiffs.
*Allen E. Ertel, John M. Humphrey* and *E. Eugene Yaw*, for defendants.

RAUP, *J.*, June 30, 1975—This case is before the court on the preliminary objection filed by defendants, Shamokin Packing Company and Milton Provision Company. The preliminary objection is a

demurrer to plaintiff's complaint "in that as a matter of law a wholesaler of raw pork products is not liable to an individual who contracts trichinosis from the consumption of those pork products, and that as a matter of law sole liability rests with those who prepared the pork products for consumption, in this case, John Pacento and Jane Pacento, his wife, trading and doing business as Diz's Restaurant."

The following allegations of liability are found in the complaint as to Shamokin Packing Company:

"Sub-Count A—Negligence—Trespass

"17. Plaintiff contracted trichinosis as a result of the carelessness and negligence of the defendant, Shamokin Packing Company, in failing to adequately inspect the pork carcass prior to and during manufacture of the sausage aforesaid and offering the said sausage for sale without taking reasonable and adequate precautions to insure the said sausage was safe for human consumption.

"18. The defendant was further careless and negligent in that he should have reasonably forseen that the sausage could have reached the plaintiff in an uncooked and therefore dangerous condition and made no effort to warn the plaintiff or its vendees of the danger of consuming such sausage that has not been completely cooked.

"Sub-Count B—Merchantability—Assumpsit

"19. The plaintiff contracted trichinosis as a result of the defendant, Shamokin Packing Company's breach of its implied warranty of merchantability that the sausage packed, prepared and sold by it was fit for the ordinary purposes for which such goods are used, i.e., human consumption, whereas when the sausage was sold it was not fit for human consumption.

"Sub-Count C — Fitness for particular purpose — Assumpsit

"20. The plaintiff, Sally J. Clouser, contracted trichinosis as a result of the defendant, Shamokin Packing Company's breach of its implied warranty of fitness for particular purpose, that is that the sausage prepared, packed and sold by it was fit for human consumption, whereas when the sausage was sold it was not fit for human consumption.

"Sub-Count D — Strict Liability — Trespass

"21. The defendant, Shamokin Packing Company, is strictly liable to the plaintiff, Sally J. Clouser, as a result of her contraction of trichinosis for the reason that the said defendant did sell a product in a defective condition, i.e., diseased and contaminated with trichinae, which was unreasonably dangerous to the user or consumer, and which did reach the consumer without substantial change in the condition in which it was sold.

"22. Defendant is liable to the plaintiff for the reason that he supplied directly or through a third person sausage for use or consumption by the plaintiff, when defendant should expect plaintiff to be endangered by its use or consumption, plaintiff being a foreseeable consumer, when defendant knew or had reason to know that the sausage is or is likely to be dangerous for the use for which it is supplied and had no reason to believe plaintiff would realize its dangerous condition and failed to exercise reasonable care to inform plaintiff or its vendees of the sausage's dangerous condition or of the facts which made it likely to be dangerous.

"Sub-Count E — Statutory Liability — Negligence — Trespass

"23. As a result of the violation of statute, 31

P.S., Section 1 and 31 P.S., Section 3(a), 6th, i.e., the sale of an article of food, consisting of or manufactured in whole or in part from a diseased substance, animal or vegetable. The defendant is liable to the plaintiff, Sally J. Clouser, as a result of her contraction of trichinosis."

Similar allegations are made against defendant, Milton Provision Company, except that the strict liability count avers:

"31. Defendant is liable to plaintiff in that he was a seller of sausage manufactured by a third person and knew or had reason to know that the sausage was, or was likely to be dangerous when used or consumed by plaintiff, she being a foreseeable user or consumer, because defendant failed to exercise reasonable care to inform plaintiff of the danger or otherwise protect her from it."

The objecting defendants rely upon Adams v. Schieb, 408 Pa. 452 (1962), which held, inter alia, that the implied warranties which accompany the sale of pork products are that such products are wholesome and fit for consumption only if properly prepared and cooked.

Although there was supportive testimony in the Adams v. Schieb trial, the Supreme Court appears to have taken judicial notice of the facts that proper cooking will kill trichinae and that there is no practical method for a processor or distributor to discover or destroy trichinae in raw pork:

"It is common knowledge that the ingestion of raw pork or raw pork products is fraught with great danger and that proper cooking of raw pork products will ordinarily destroy the trichinae and render the pork fit for human consumption. Furthermore, there is no practical method of examination of raw

pork to ascertain whether such pork is trichinae infested and thereafter unfit for use.": Id. at pages 461-62.

The courts of other states have taken a similar position on this issue. See e.g., Nicketta v. National Tea Co., 338 Ill. App. 159, 87 NE 2d 30 (1949); Silverman v. Swift & Co., 141 Conn. 450, 107 A. 2d 277 (1954); Kobeckis v. Budzko, 225 A. 2d 418 (Me. 1967).[1]

---

1. "A great deal has been written in government publications, law reviews, medical journals and in decided cases, of which the footnote is illustrative to expose, teach and adjudicate the danger of trichinae in raw pork. It has for a number of years been clear that as a practical matter there is no way to assure the public that raw pork is free of the trichinae. The nematodes are microscopic in size and testing pork for the presence of the infection requires microscopic examination of the meat. The presence of the trichinae in a particular sample establishes only that the infection is present in that specimen and the infection may or may not exist elsewhere in the body of that particular animal. Conversely the absence of the trichinae in a given specimen does not establish that the infection is not present elsewhere in the body of the animal. To establish that a given pork carcass is free from trichinae would involve examination of the entire subject matter, the result of which would leave no saleable meat.

"Because of this fact, the federal government as early as 1906 ceased to inspect pork for trichinae, lest such government inspection be accepted as a representation that the meat was free from infection, when in fact no such representation could be made short of destroying the meat in the process.

"With the passage of time, it is now stated, with authority, that certain freezing procedures will kill the pork infection, but the cost of such refrigeration has been considered from a merchandising standpoint as prohibitive. Even more recently it is stated, with authority, that treatment of the pork by radiation, while not killing the trichinae, renders the nematodes incapable of reproduction so that ingestion by the host body brings on no new cycle of reproduction with resultant trichinosis. As of

There is no allegation of any express warranties in this case on the part of the processor and distributor as to the pork being free of trichinae. There has been advanced to the court no scientific information which would indicate that, since Adams v. Schieb, any practical method has been developed to ascertain the presence of trichinae or to render an infestation thereof harmless. Accordingly, Adams v. Schieb is controlling and the implied warranty counts against the processor and the distributor will be dismissed.[2]

The common law negligence counts against the objecting defendants assert the existence of a duty of care on the part of the processor or distributor of raw pork products to refrain from selling pork containing active trichinae. To hold that such a duty might exist would be inconsistent with the Adams v. Schieb decision, unless there has been some scientific development since Adams which would enhance the practicality of a processor/distributor de-

this date, it is to be inferred, that such treatment of pork is considered from a merchandising standpoint prohibitive.

"6. As a result the public has been the object of teaching that there is a third method of protection from trichinae, namely, that the application of heat in cooking kills the nematodes. This means of protection has been of such general knowledge that in a number of cases the court has taken judicial notice of the fact. See Silverman, supra, 107 A. 2d 277 (5, 6-9), 281; Meyer v. Greenwood (1955) 125 Ind. App. 288, 124 N.E. 2d 870 (2-4), 872; Golaris v. Jewel Tea Co. Inc., (D.C. Ill. 1958) 22 F.R.D. 16 (8), 20, and Nicketta v. National Tea Co. (1949) 338 Ill. App. 159, 87 N.E. 2d 30 (5), 32, took judicial notice that trichinosis cannot be contracted from 'properly' cooked pork." at page 429.

2. Plaintiff will be given 20 days in which to file an amended complaint alleging with specificity any such scientific development which might alter the practicality of detection or destruction of trichinae by the processor or distributor.

tecting or effectively destroying trichinae in raw pork. No such development is alleged.

Before a cause of action in strict liability will arise, it must appear inter alia that the product is in a defective condition unreasonably dangerous to the user, and that the product is expected to reach the user without substantial change in the condition in which it is sold. Restatement, Torts 2d, sec. 402 A. The Adams decision leads us to hold that, as a matter of law, these elements are lacking; raw pork containing active trichinae is not unreasonably dangerous, because of the widespread cognizance of the problem and because proper cooking will kill the nematodes; moreover, the processor and distributor are permitted to expect that the product will reach the user in a properly cooked state.

Plaintiff finally argues that the sale of trichinae infected pork is violative of the Act of May 13, 1909 (31 P.S. §§1, 3(a)(6)):

"It shall be unlawful for any person, firm, copartnership, limited partnership, joint-stock company, or corporate body, by himself, herself, itself, or themselves, or by his, her, its, or their agents, servants, or employes, to manufacture, sell, offer for sale, expose for sale, or have in possession with intent to sell, any article of food which is adulterated or misbranded within the meaning of this act.

"The possession of any adulterated or misbranded article of food shall be deemed prima facie evidence of an intent to sell such article of food. 1909, May 13 P.L. 520 §1; 1937, June 1, P.L. 1127, §1."

"(a) For the purpose of this act, an article of food shall be deemed to be adulterated,

". . .

"Sixth. If it consists of, or is manufactured in whole or in part from, a diseased, contaminated, filthy, or decomposed substance, either animal or vegetable; or an animal or vegetable substance produced, stored, transported, exposed, or kept in a way or manner that might tend to render the article diseased, contaminated, or unwholesome; or if it is any part of the product of a diseased animal, or the product of an animal that had died otherwise than by slaughter."

In spite of the vintage of this legislation, and the quantity of litigation over the years relating to trichinosis, we have found no Pennsylvania cases wherein this adulterated food enactment has been applied to pork containing trichinae.

Plaintiff has referred to a similar statute in Ohio which has been the subject of litigation involving trichinae infected pork. The pertinent portions of the Ohio statute as contained in Kurth v. Krumme, 143 Ohio St. 638, 56 N.E. 2d 227 (1944), are:

"Section 12760, General Code, provides:

" 'Whoever sells, offers for sale or has in possession with intent to sell, diseased, corrupted, adulterated or unwholesome provisions without making the condition thereof known to the buyer, shall be fined not more than fifty dollars or imprisoned twenty days, or both.'

"Section 5774, General Code, reads:

" 'No person, within this state, shall manufacture for sale, offer for sale, sell or deliver, or have in his possession with intent to sell or deliver, a drug or article of food which is adulterated . . .'

"Section 5778, General Code, recites:

" 'Food, drink, confectionery or condiments are adulterated within the meaning of this chapter . . .

(5) if it consists wholly, or in part, of a diseased, decomposed, putrid, infected, tainted or rotten animal. . . .' "

Numerous cases in Ohio and one case in the U.S. Circuit Court of Appeals hold that the above statute includes pork infected with trichinellae spiralis as "diseased." Sale of such pork violates the law and renders a seller negligent per se, even if he does not know that meat is diseased or infected. Kurth v. Krumme, supra; Leonardi v. A. Habermann Provision Co., 143 Ohio St. 623, 56 N.E. 2d 232; Torito v. G. H. Hammon Co., 110 F 2d 135 (C.A. 6th, 1940).

For the reasons hereinafter set forth, we do not consider it necessary to decide whether trichinae infected pork constitutes "adulterated" food within the meaning of the Pennsylvania statute.

With respect to all the tort theories advanced, plaintiff is confronted with the obstacle of the doctrine of superseding cause. If plaintiff contracted trichinosis from sausage eaten at Diz's Restaurant, the product could not have been properly cooked. The restaurateur is charged with knowledge of the potential presence of trichinae in raw pork, and with awareness that the processor and distributor are without practical means to detect or destroy the same; therefore, to fail to properly cook the pork would be extraordinary negligence, relieving the precessor/distributor of any liability they might otherwise have. Restatement, Torts 2d, Sec. 447; Whitner v. Lojeski, 437 Pa. 448, 263 A. 2d 889 (1970).

## ORDER

And now, June 30, 1975, for the reasons set forth in the foregoing opinion, the preliminary objections of Shamokin Packing Company and Milton Provi-

sion Company are sustained. Plaintiff is given 20 days from the date of this order in which to file an amended complaint specifically alleging any scientific developments since the Supreme Court decision in Adams v. Schieb which would significantly enhance the ability of a processor/distributor of raw pork to detect or effectively destroy trichinae in the product. In the absence of such an amended complaint, the complaint as to the objecting defendants will be deemed dismissed without further order of court.