Forte J.
This is an action to recover damages for the defendant’s alleged negligence, breach of warranty and unfair practices in violation of G.Lc. 93A in selling food to the plaintiff which caused him to become ill. Count III of the complaint for G.Lc. 93A damages was withdrawn at the close of the plaintiffs case.
There was evidence at trial that at 6:00 P.M. on March 23,1986, plaintiff Daniel G. McSweeney, Jr. (“McSweeney”), a healthy twenty-one year old, ate three Quarter Pounders with cheese which were prepared by and purchased from the defendant. McSweeney was familiar with the taste of Quarter Pounders and testified that the first and third ones he ate on March 23,1986 tasted “funny.”
Atapproximately 8:00 P.M. the same evening, McSweeney began to suffer stomach cramps and by 11:00 P.M., began to experience diarrhea The following day, he had a fever, chills, diarrhea, cramps and noticed blood in his stool.
There was evidence that none of McSweeney’s family members or friends with whom he had shared his meals on March 23,1986 and on the preceding days had become ill.
On Thursday, March 27,1986, McSweeney was admitted to the Lynn Hospital where he remained asanimpatientuntilMarch31,1986. The first stool culture taken was lost, but a second culture indicated the presence of Campylobacter bacteria for which McSweeney was treated.
The plaintiff called asawitnessone Dr. Barkin who was the plaintiff’s Lynn Hospital attending physician and who had had experience with ten to fifteen prior cases of Campylobacter food poisoning. Barkin testified that based on McSweeney’s symptoms and hospital test results, McSweeney did have Campylobacter food poisoning, that the Campylobacter bacteria had come from the McDonald’s meal and that he was certain that the Quarter Pounders had caused the plaintiffs illness. Barkin further testified that although the incubation period for Campylobacter is normally two to four days, such period varies depending on how long the toxin is in the meat, how much toxin is in the meat, how long the meat is putrefying and how much inoculum is present The doctor opined that, in McSweeney’s case, the incubation period was shortened because of the significant contamination in the Quarter Pounders and because of the amount of cheeseburgers eaten.
At the close of the plaintiffs case, the defendant filed a Dist./Mun. Cts. R. Civ. P., Rule 41(b) (2) “Motion for Directed Finding” for the defendant Said motion was denied.
The defendant’s medical expert witness, who had not treated or examined the plaintiff, testified that the incubation period for Campylobacter is three to five days, that McSweeney was exposed to Campylobacter three to five days prior to March 23, 1986 and that the bacteria could not have come from McDonald’s.
*198 The trial court found for the plaintiff and awarded damages on complaint counts I and II for the defendant’s negligence and breach of warranty.
The defendant now claims to be aggrieved by the court's denial of both its “Motion for a Directed Finding” and the following requests for rulings:
4. The evidence requires a finding for the defendant, McDonald’s, and that the defendant was not negligent
19. The evidence requires a finding that the Quarter Pounders in question were not unwholesome.
20. There was no evidence that the plaintiffs illness was caused by the food furnished by McDonald’s.
23. The evidence is insufficient as a matter of law to warrant a finding for the plaintiff.
There was no error.
Request number 19 tests the sufficiency of the evidence to permit a finding that the Quarter Pounders consumed by the plaintiff were unwholesome. Evidence that the cheeseburgers tasted “funny” was sufficient to permit such finding. In Johnson v. Kavanos, 296 Mass. 373 (1937), descriptions of the food as “notjust right” or “peculiar” was held sufficient to warrant a finding of unwholesomeness. “Tasting funny” was held sufficient in Bergantino v. General Baking Co., 298 Mass. 106 (1937) and in Mellace v. John P. Squire Co., 306 Mass. 515 (1940).
Request number 20 tests the sufficiency of the evidence to permit a finding of a causal relationship between the unwholesome cheeseburgers and the plaintiffs illness. There was testimony-, by the plaintiffs doctor that McSweeney had Campylobacter poisoning and that such bacteria came from the Quarter Pounders in question. The plaintiff was required to show only that the food was the probable cause of his illness. Marahan v. Economy Grocery Stores, 282 Mass. 548, 550 (1933). Here the testimony was stronger.
Request number 4 tests the sufficiency of the evidence to permit a finding that the defendant was negligent. No direct evidence of any specific act or omission warranting an inference of negligence was reported. However, where the evidence would permit a finding of a violation of a criminal statute, such evidence may be considered as evidence of negligence. Boggs v. Hirschfield, 293 Mass. 1, 4 (1935). General Laws c. 94, §150 makes it a crime to sell unwholesome food without making the condition known to the purchaser. Knowledge on the part of the seller is not a necessary element of the crime.. Holt v. Mann, 294 Mass. 21 (1936); Schuler v. Union News Co., 295 Mass. 350 (1936). Evidence of the defendant’s sale of unwholesome food to the plaintiff in violation of G.Lc. 94, §150 permitted afinding of the defendant’s negligence herein. Request number 23 and the defendant’s Dist./Mun. Cts. R. Civ. P., Rule 41 (b) (2) motion each test the sufficiency of the evidence to permit a finding for the plaintiff.[1] As to the count for negligence, there was .evidence of the defendant’s sale of unwholesome food, the defendant’s violation of G.Lc. 95, §150, the plaintiffs illness- and the doctor’s opinion of the causal relationship between the unwholesome food and the plaintiffs illness.
*199 As to the count for breach of warranty, there is now no doubt under our decisions that the transaction amounted to a sale as to the food consumed. Schuler v. Union News Co., supra at 353 and cases cited. General laws c. 106, §2-314(1) and (2) (c) and §2-315. Selling food unfit for consumption is a breach of the implied warranty of fitness for ordinary purposes; to wit: eating.
There being no error, the report is dismissed.

 Defendants request number 1 that “[t]he evidence does not warrant a finding for the plaintiff” was allowed. Neither party called this inconsistency to the trial judge’s attention and could not, therefore, have raised the issue before this Division for the first time. Request number 1 was not, in any event, briefed or argued by either party; the court’s extensive findings of fact and consistent rulings on defendant’s remaining twenty-eight requests suggest strongly that the disposition of request number 1 as stated in the report was an inadvertent clerical error.