WILLIAM HUEBNER *et al.*, Plaintiffs-Appellants, *v.* HUNTER PACKING COMPANY *et al.*, Defendants-Appellees.

Fifth District   No. 77-402

Opinion filed April 4, 1978.

Kassly, Bone, Becker & Carlson, of Belleville (William S. Beatty, of counsel), for appellants.

Pope & Driemeyer, of Belleville, for appellee Hunter Packing Company.

Gundlach, Lee, Eggmann, Boyle & Roessler, of Belleville, for appellee Clayton Schneider.

Mr. JUSTICE KARNS delivered the opinion of the court:

Plaintiffs appeal the judgment of the Circuit Court of St. Clair County dismissing, for failure to state a cause of action for which relief may be granted, their amended complaint against Hunter Packing Company, a division of John Morrell & Co. (Hunter) and Clayton Schneider d/b/a Schneider's A & G (Schneider). The amended complaint alleges the defendants' liability under theories of both strict liability in tort and implied warranty for plaintiffs' injuries sustained by contracting trichinosis from raw pork distributed by Hunter and sold to plaintiffs by Schneider.

Plaintiffs assert that the trial court erred in reserving decision on defendant Hunter's motion to dismiss plaintiffs' amended complaint "after" ordering Hunter to file its answer within 15 days. This contention can be disposed of summarily. Hunter moved to dismiss the amended complaint, reasserting its pending motion to dismiss the original complaint. The court reserved decision on the motion and ordered Hunter to answer, explicitly stating in the order that Hunter's motion to dismiss would not be prejudiced by the filing of an answer. Within the time allotted for filing its answer, Hunter moved the court to reconsider this order. The court allowed that motion and stated that Hunter was not required to answer until the motion to dismiss was resolved. Subsequently the court dismissed the amended complaint for failure to state a cause of action. We find no error in this procedure.

Trichinosis is a disease caused in humans by eating the meat of an animal which contains trichinella spiralis larvae, or trichinae. When a human eats pork containing trichinae, the capsule in which they are encased is dissolved during the digestive process and the larvae pass into the small intestine. The trichinae then reach adulthood and reproduce,

causing the disease to spread via the lymph glands through the body and to lodge in the muscles, including the heart. It is a severe and painful disease, although rarely fatal. 11 Proof of Facts 373 (Trichinosis) (1961).

■■■ As this cause is before us on the pleadings, all facts well pleaded will be accepted as true. (*Acorn Auto Driving School, Inc. v. Board of Education,* 27 Ill. 2d 93, 96, 187 N.E.2d 722, 724 (1963).) An action should not be dismissed pursuant to section 45 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 45) for failure to state a cause of action unless it clearly appears that no set of facts could be proved under the pleadings which would entitle the plaintiff to relief. (*Wooded Shores Property Owners Association, Inc. v. Mathews,* 37 Ill. App. 3d 334, 337, 345 N.E.2d 186, 189 (2d Dist. 1976).) For the reasons set out below, we hold that the present plaintiffs cannot be entitled to relief under either implied warranty or strict liability in tort theory.

Counts II, IV, VI, and VIII of the amended complaint alleged that defendants made certain representations and warranties to the general public, including the plaintiffs, which were violated in that "said pork was contaminated and not fit for human consumption." Plaintiffs cite the Illinois Uniform Commercial Code sections 2—313 through 2—318 (Ill. Rev. Stat. 1975, ch. 26, pars. 2—313 through 2—318) as the source of these warranties. The pertinent statute, section 2—314, states:

"(1) * * * a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this Section the serving for value of food or drink to be consumed either on the premises or elsewhere is a sale.

(2) Goods to be merchantable must be at least such as
* * *

(c) are fit for the ordinary purposes for which such goods are used;* * *."

As we will explain below, we believe that the "ordinary purpose" for which raw pork is used is to be eaten after thorough cooking.

■■ For the proposition that a retail seller of meat for immediate consumption impliedly warrants the "fitness and wholesomeness for consumption" of the meat, the plaintiffs urge us to rely on *Wiedeman v. Keller,* 171 Ill. 93, 49 N.E. 210 (1897). Although *Wiedeman* is the only Illinois Supreme Court case on trichinosis, we find *Wiedeman* no longer controlling because of the passage of time and the increase in both scientific and common knowledge of the disease. The *Wiedeman* opinion is explicitly based on the policy that an implied warranty must be assumed because the consequences to life and health from eating unsound pork can be so serious. The court's reason for its decision, however, is, in light of present knowledge, untrue:

"It may be said that the rule is a harsh one; but, as a general rule, in
the sale of provisions the vendor has so many more facilities for
ascertaining the soundness or unsoundness of the article offered for
sale than are possessed by the purchaser, that it is much safer to
hold the vendor liable than it would be to compel the purchaser to
assume the risk." (171 Ill. 93, 99, 49 N.E. 210, 211.)

The court's statement may be true with respect to other forms of defect or
disease in meat, but even today it is impossible for a vendor to ascertain
the presence of trichinosis in raw pork without thoroughly destroying the
pork itself.

■■ It has been scientifically established that thorough cooking to 137° F.
will destroy all trichinae, and the trial court in the present case
presumably took judicial notice of this fact. Thus, although *Wiedeman*
did not refer to cooking by the consumer, the law in Illinois has construed
the implied warranty as meaning that the retail vendor warrants that the
pork is wholesome and fit for consumption *after proper cooking* by the
consumer. The resulting warranty has been formally defined as that the
raw pork is "fit for eating only after it has been cooked with the
commonly used precautions prevailing among the general public."
*Silverman v. Swift & Co.*, 141 Conn. 450, 458, 107 A.2d 277, 281 (1954).

Although in some jurisdictions whether pork has been "properly
cooked" is a jury question, in Illinois, as in the majority of States, raw pork
is not considered "properly cooked" unless the temperature of all of the
meat has been raised to at least 137° F. (*Nicketta v. National Tea Co.*, 338
Ill. App. 159, 165-68, 87 N.E.2d 30, 33-34 (1st Dist. 1949); *Zorger v.
Hillman's*, 287 Ill. App. 357, 360, 4 N.E.2d 900, 901 (1st Dist. 1936);
*Kobeckis v. Budzko*, 225 A.2d 418, 424 (Me. 1967); *Hollinger v. Shopper's
Paradise*, 142 N.J. Super. 356, 358, 361 A.2d 578, 578 (1976).) Thus, to
allege that one contracted trichinosis after consuming pork which had
been "properly cooked" is to allege a "factual impossibility" and the
complaint must be dismissed. (*Nicketta v. National Tea Co.*, 338 Ill. App.
159, 168, 87 N.E.2d 30, 34 (1st Dist. 1949).) For this reason, there is no set
of facts under which the present plaintiffs can recover under a theory of
implied warranty.

Counts I, III, V and VIII of the amended complaint alleged that the
raw pork purchased by plaintiffs was "not reasonably safe" by reason of
the fact that it was contaminated by trichinella spiralis. In their attempt to
state a cause of action based on strict liability in tort, plaintiffs assert that
all of the Illinois trichinosis cases were impliedly overruled by *Suvada v.
White Motor Co.*, 32 Ill. 2d 612, 210 N.E.2d 182 (1965), in which our
supreme court adopted the Restatement (Second) definition of strict
liability in tort. That definition is as follows:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

    (a) the seller is engaged in the business of selling such a product, and

    (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

(2) The rule stated in subsection (1) applies although

    (a) the seller has exercised all possible care in the preparation and sale of his product, and

    (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

Restatement (Second) of Torts §402A (1965).

■■ We believe that *Suvada* does not change the result otherwise directed by prior case law. It has been held in at least one other jurisdiction that the Restatement (Second) definition of strict liability does not encompass the relationship between a retail vendor of raw pork which contains trichinae and the purchaser who thereby contracts the disease. In *Scheller v. Wilson Certified Foods, Inc.*, 114 Ariz. 159, 559 P.2d 1074 (Ariz. App. 1976), the court held that the plaintiff was unable to show that the fresh raw pork sold by the retailer (or packer) was in a *"defective* condition which was *unreasonably dangerous* to the consumer." (Emphasis in original.) (114 Ariz. 159, 162, 559 P.2d 1074, 1077.) The *Scheller* court also noted that the comment to section 402A (Restatement (Second) of Torts §402A, comment *i* (1965)) "is indicative that where, as here, the ordinary consumer, with the ordinary knowledge common in the community, would be aware of the danger so as to take steps to eliminate it, the product is not unreasonably dangerous within the contemplation of this section." (114 Ariz. 159, 162, 559 P.2d 1074, 1077.) Thus we find that pork containing trichinae is not in a "defective condition" which is "unreasonably dangerous" as contemplated by *Suvada*, or "not reasonably safe" as described by plaintiffs.

Plaintiff argues that *Cunningham v. McNeal Memorial Hospital*, 47 Ill. 2d 443, 266 N.E.2d 897 (1970), precludes judgment for defendants because they could not detect the presence of trichinae in the raw pork. In *Cunningham*, the court extended strict liability in tort to the hospital which gave a patient a transfusion of defective blood from which he contracted serum hepatitis. In rejecting defendant's contention that it should not be held liable because there is no known means to detect the existence of serum hepatitus virus in whole blood, the court stated:

"To allow a defense to strict liability on the ground that there is no way, either practical or theoretical, for a defendant to ascertain the existence of impurities in his product would be to emasculate the doctrine and in a very real sense would signal a return to a negligence theory." 47 Ill. 2d 443, 453, 266 N.E.2d 897, 902.

Notwithstanding the fact that the General Assembly subsequently exempted blood from strict liability standards (Ill. Rev. Stat. 1973, ch. 91, par. 182), we believe that *Cunningham* is an illuminating illustration of both the nature of strict liability theory and the difference between contracting serum hepatitus from a blood transfusion and contracting trichinosis from eating infected pork. Strict liability is imposed as a matter of policy. If the hospital cannot detect the impurities of whole blood, neither can the hapless patient who must passively receive the transfusion and hope for the best. Thus in absence of the statute a policy choice was made by the court that the hospital, regardless of the state of science in detecting impurities, must bear the risk. Similarly, in the present case, the packer and retailer are unable, given the present level of scientific knowledge, to detect the presence of trichinae in raw pork. The distinction, however, is that unlike the passive recipient of a transfusion, the purchaser of raw pork is able not just to avoid the risk of disease but to *eliminate* it merely by raising the temperature of the meat to 137° F. Thus one of the most important policy considerations implicit in the imposition of strict liability is not present and the doctrine is therefore not applicable in the present context.

For the foregoing reasons, the judgment of the Circuit Court of St. Clair County is affirmed.

Affirmed.

EBERSPACHER, P. J., and JONES, J., concur.