CLARENCE A. ANDERSON *et al.*, Plaintiffs-Appellants, *v.* THE GRAND BAHAMA DEVELOPMENT COMPANY, LTD., *et al.*, Defendants-Appellees.

First District (5th Division)  No. 77-657

Opinion filed December 22, 1978.—Rehearing denied January 25, 1979.

William J. Harte, Edward T. Joyce, James P. Chapman, and Martha M. Jenkins, all of Chicago, for appellants.

Baker & McKenzie, of Chicago (Francis D. Morrissey, Thomas F. Bridgman, Peter J. Mone, and James T. Hitch, III, of counsel), for appellees.

Mr. JUSTICE WILSON delivered the opinion of the court:

Plaintiffs, purchasers of unimproved real property in Lucaya, Grand Bahama Island, appeal the trial court's dismissal of three counts of their four-count complaint for failure to state a cause of action under either the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1975, ch. 121½, par. 137.1 *et seq.*) or under the Securities Act of 1933 (15 U.S.C. §77a *et seq.* (1976)). The fourth count of the complaint involved a violation of the Interstate Sales Act (15 U.S.C. §1709 (1976)). That count is not involved in this

appeal. The sole issue raised is whether plaintiffs' complaint states a violation of either the Illinois or Federal securities laws. We reverse and remand.

■■ The dismissal in this case was granted in response to defendants' motion to dismiss for failure to state a cause of action.[1] Under the rules of pleading in Illinois, the motion to dismiss for failure to state a cause of action is a section 45 motion. (Ill. Rev. Stat. 1975, ch. 110, par. 45.) A section 45 motion attacks the legal sufficiency of the complaint. In considering a section 45 motion, a court considers only the allegations made in the complaint and exhibits attached thereto. A section 45 motion should be granted *only* if "it appears that no set of facts could be proven under the pleadings which would entitle plaintiff[s] to relief." (*Huebner v. Hunter Packing Co.* (1978), 59 Ill. App. 3d 563, 565, 375 N.E.2d 873, 875.) Therefore, it is our task to look to plaintiffs' pleadings and determine whether any set of facts could be proven under the pleadings which would entitle them to relief.

The plaintiffs, all residents of Illinois, include named plaintiffs and other members of a class of individuals who were sold interests in unimproved property in Lucaya, Grand Bahama Island (Lucaya Development) by the defendants. The interests were evidenced by land installment contracts. Defendants include: (1) The Grand Bahama Development Company, Limited (Development Company), the owner and developer of the real property, (2) American Devco., Incorporated (Devco), the holding company for the United States operations of Development Company, (3) Bahama Realty Corporation (Bahama), the holder of the exclusive sales rights in the United States for property in the development, (4) American International Realty Corporation, the exclusive franchisee or agent of Bahama for the sale in Illinois of development property, and (5) Intercontinental Diversified Corporation, the parent or related corporation of Development Company, Bahama, and Devco. Plaintiffs allege that the sales of the interests, as represented by the total promotional and selling efforts of defendants, represent more than sales of unimproved real estate. They contend that each sale constituted the sale of an investment contract, which is a security under both Illinois and Federal Securities Laws, and as such required compliance with the appropriate securities law.

Count I states a violation of the registration requirements of the Illinois Securities Law of 1953. (Ill. Rev. Stat. 1975, ch. 121½, par. 137.5.) In this count, plaintiffs set forth the basic allegations of their complaint in a section entitled *The Investment Scheme*. They allege that defendant,

---

[1] Defendants also moved the trial court to dismiss this cause of action pursuant to section 48 of the Illinois Civil Practice Act. (Ill. Rev. Stat. 1975, ch. 110, par. 48.). The court did not rule on that motion.

Development Company, by or through itself, its parent, subsidiary or affiliate corporations, acquired substantially all of the land in the Lucaya area on Grand Bahama Island and developed it in accordance with a Master Plan (Plan). This Plan called for the construction of facilities desirable for a complete community, including roads, utilities, schools, recreational facilities, parks, greenways, churches, waterways, water reserves, beaches, marinas, golf courses, shopping complexes, and resort hotels, in or near the Lucaya Development. Plaintiffs contend that this Plan has been followed from the time of its preparation to the time of this complaint.

They next allege that in mid-1960, defendants instituted an extensive advertising and promotional campaign aimed "at any prospective market, and particularly at purchasers, of such land for investment purposes only." Paragraph 16 of plaintiffs' complaint contains extensive samplings of the investment-orientation of the promotional and advertising materials. Also, plaintiffs attached copies of a number of the purchase forms used in the sales. Some of these forms contained boxes for an indication of whether the interest in the property was being purchased for investment or residential purposes.

The last paragraph of the allegations setting forth *The Investment Scheme* makes it clear that plaintiffs could not, nor were they expected to do anything to increase the value of their investment. It alleged that:

"* * * land purchased by investors 'to hold for the future' would become invaluable and salable for tourists, persons who were in the business of constructing housing, particularly multi-family and high-rise types of housing, and businesses on Grand Bahama Island, *solely by virtue of the development, advertising and promotion of the Island and of the Lucaya Development by Development Company, its parent, subsidiary or affiliate corporations, adherence to the Master Plan, and consequent increase in tourism, permanent residents and businesses."* (Emphasis added.)

Count II repeats the basic allegations made in count I and states a violation of the registration requirements of the Securities Act of 1933 (15 U.S.C. §77f (1976)). Count III states a violation of the antifraud provisions of the Federal Securities Act (15 U.S.C. §§77q and 77w (1976)). In addition to the basic allegations made in count I, count III alleges that defendants made, participated in making, or approved of certain representations, including:

"(b) The property in the Lucaya Development would increase in value;

(c) Investors would be able to sell their investment contracts at a profit or 'trade-up' to more valuable property;

(d) Other people had made substantial profits on their investments in the Lucaya Development;

(e) Development Company's efforts, by or through itself, its parent, subsidiary or affiliate corporations, would result in the Lucaya Development increasing in value without any effort on the part of investors."

Also, plaintiffs alleged that defendants failed to disclose or participated in or approved the failure to disclose that the sales price of the purchased land bore no reasonable relation to the fair market value of the land and that the investor who was interested in reselling his interest would be in direct competition with the Development Company. The basic relief sought by plaintiffs, in all counts, was rescission of their contracts.

OPINION

The crucial factor in our determination of whether plaintiffs have made out a cause of action in counts I, II, and III, is the characterization which we give to the interests which plaintiffs purchased from defendants. Defendants contend that plaintiffs purchased "interests in real estate, with the hope that they could realize gain by such ownership, or by their own sales of the land." Plaintiffs contend that they purchased investment contracts with the hope of obtaining profits solely from the efforts of defendants.

In *Securities & Exchange Com. v. W. J. Howey Co.* (1946), 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100, the United States Supreme Court defined investment contract as:

"[A] contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party * * *." (328 U.S. 293, 298-99, 90 L. Ed. 1244, 1249, 66 S. Ct. 1100.)

In explaining the definition, the court indicated that the definition embodied a "flexible rather than a static principle, * * * capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits." (328 U.S. 293, 299, 90 L. Ed. 1244, 1250, 66 S. Ct. 1100.) This definition and broad construction has been adopted in Illinois. (*Polikoff v. Levy* (1965), 55 Ill. App. 2d 229, 204 N.E.2d 807.) Therefore, plaintiffs must allege sufficient facts to meet the broad test of *Howey* if their interests are to be characterized as investment contracts under either the Illinois or Federal securities laws.

Several recent cases have extended the *Howey* test to situations involving the purchase of land in a subdivision or Development. (*Fogel v. Sellamerica, Ltd.* (S.D.N.Y. 1978), 445 F. Supp. 1269; *Timmereck v. Munn* (N.D. Ill. 1977), 433 F. Supp. 396; *McCown v. Heidler* (10th Cir.

1975), 527 F.2d 204.) In *Fogel*, the court denied defendants' motion for a summary judgment, with leave to renew, when it found that it was not clear whether there was a common enterprise between the parties. In *Timmereck*, the court denied defendants' motion to dismiss when it could not determine whether plaintiffs had pleaded a claim cognizable under the securities laws from the materials presented by plaintiffs. In *McCown*, the court found that the trial court had ruled incorrectly when it denied plaintiffs' attempt to amend their complaint to include allegations of security law's violations. Each of these cases emphasized the importance of viewing all the facts to determine the nature of the involved transaction. *Fogel*, at 1277; *Timmereck*, at 401-03; *McCown*, at 208.

■ Defendants contend that the relevant facts of this transaction are only the terms of the contract between the parties and the terms of a property report referred to in the contract. As support, they cite to language in Bubula v. The Grand Bahama Development Co., No. 73 C 3131 (N.D. Ill. 6/27/74), an earlier case involving a suit arising out of the same facts as the present suit. However, this language has been specifically criticized by *Timmereck v. Munn* (N.D. Ill. 1977), 433 F. Supp. 396. In *Timmereck*, the United States District Court for the Northern District of Illinois made it clear that the facts of a transaction include not only the terms of the contract but also the specific oral and written representations made by defendants in their promotional and advertising campaign which was aimed at inducing plaintiffs to purchase land. In that case it was alleged that defendant had stated that they would provide specific improvements and amenities which would substantially increase the value of the land which plaintiffs had purchased. We think that the *Timmereck* rule is the better rule.

■ Looking at the terms of the contract and the representations allegedly made by defendants in this case, we find that plaintiffs have made the proper allegations in support of a finding that an investment contract existed so as to withstand defendants' section 45 motion. Plaintiffs have alleged that they purchased the interests in the land as "investments." Although the motivation of the purchaser is not controlling, it is one factor which courts have considered in determining a purchaser's interest. (*Fogel v. Sellamerica, Ltd.* (S.D.N.Y. 1978), 445 F. Supp. 1269.) Another factor which courts have considered is the emphasis of defendants' promotional materials. (*Timmereck v. Munn* (N.D. Ill. 1977), 433 F. Supp. 396; *Davis v. Rio Rancho Estates, Inc.* (S.D.N.Y. 1975), 401 F. Supp. 1045.) Plaintiffs' paragraph 16 of their complaint specifically indicates the investment orientation of defendants' promotional materials. Reference is made to language in the materials which advised plaintiffs to purchase land in the Lucaya Development in order to "diversify their

'Investment Portfolio.' " One of the advertising and promotional materials contained a returnable coupon which asked plaintiffs if they were interested in purchasing land for "investment" or other purposes. Other materials referred to the rewards which other "investors" had already reaped. Finally, some of the purchase forms used by defendants specifically requested information on whether plaintiffs intended to purchase the land for residential or investment purposes. This has been considered to have been a significant factor in finding that an investment contract might exist in at least one other case. (*McCown v. Heidler* (10th Cir. 1975), 527 F.2d 204, 210.) We find it particularly significant here when considered in the context of defendants' alleged representations.

■ Next, plaintiffs have alleged that their investment would become valuable "by virtue of the development, advertising and promotion of the Island and of the Lucaya Development by [defendants] * * *, adherence to the Master Plan, and consequent increase in tourism, permanent residents and businesses." This allegation meets the requirements that plaintiffs invest their money in a common enterprise. "A common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties." (*Securities & Exchange Com. v. Glenn W. Turner Enterprises, Inc.* (9th Cir. 1973), 474 F.2d 476, 482 n. 7.) Plaintiffs' allegation clearly indicates that their fortunes are interwoven with and dependent upon the efforts of defendants.

Defendants argue that there was no common enterprise because: (1) defendants were not contractually obligated to make any improvements, other than those for which plaintiffs were assessed a small annual service fee; and (2) all promised improvements had been performed by defendants. We refuse to accept defendants' first argument for the same reason that we refused to accept the argument that the terms of the contract contain the sole representations made between the parties. Promised improvements may also be found in defendants' promotional materials and utterances. (*Fogel v. Sellamerica, Ltd.* (S.D.N.Y. 1978), 445 F. Supp 1269; *Timmereck v. Munn* (N.D. Ill. 1977), 433 F. Supp. 396.) As to defendants' second argument, we do not read plaintiffs' allegation as referring to improvements which already have been performed. Plaintiffs' allegation refers to an ongoing scheme which will make their land more valuable. The scheme includes not only development, but also continued advertising and promotion of the land by defendants. Also, plaintiffs have stated that defendants promised that the land would become valuable by adherence to the Master Plan. Although plaintiffs fail to list the continuing construction projects included in the Plan, we think that the improvements which already have been made in accordance with

this Plan and which are listed in plaintiffs' complaint are sufficiently suggestive of the types of improvements which can be expected. To resist a motion to dismiss, plaintiffs need allege no more than this.

■■ Lastly, plaintiffs allege that the land will become "valuable and salable to tourists" and others *solely* by virtue of defendants' efforts. They also allege that purchasers of the land could not, nor were they expected to, do anything to increase the value of their investments. These allegations fulfill the final two requirements for an investment contract as stated in *Howey*. First, they fulfill the requirement that plaintiffs' investment was for the purpose of receiving profits. Capital appreciation in property is a recognized form of profit for purposes of meeting this requirement. (*United Housing Foundation, Inc. v. Forman* (1975), 421 U.S. 837, 852, 44 L. Ed. 2d 621, 632, 95 S. Ct. 2051; *Timmereck v. Munn* (N.D. Ill. 1977), 433 F. Supp. 396, 402 n. 3.) Second, they fulfill the requirement that the profits be obtained solely through the efforts of defendants. In fact, plaintiffs' allegations stress the fact that they *could do nothing* to increase the value of their investments.

For the foregoing reasons, we hold that plaintiffs have made out a proper cause of action under both Federal and Illinois securities laws. Therefore, we reverse and remand with instructions that the trial court conduct further proceedings not inconsistent with this opinion.

Reversed and remanded.

LORENZ and MEJDA, JJ., concur.