**Ron POINDEXTER, Delores Poindexter, Linda Binder, Nat Schaffer, Sol Schaffer, Paul Craig, Julius Komarmy, Alecia Gearing, Loucretia Gearing, Sydney Gearing, Robert Brown, Teresa Miller, Harry Sutphen, Clark Marsh, and James Moore, Plaintiffs,**

v.

**MERRILL LYNCH, PIERCE, FENNER & SMITH a/k/a Merrill Lynch Futures, Inc., John R. Dobbyn, Dyan MacDonald Dobbyn, MacDonald–Dobbyn Managed Commodity Program and Robert Craig, Defendants.**

No. 86–CV–40091–FL.

United States District Court, E.D. Michigan, S.D.

April 8, 1988.

---

Jeffrey Boxer, Raymond Edelman, Boston, Mass., Kenneth A. Flaska, Detroit, Mich., for plaintiffs.

Douglas G. Graham, Dennis K. Egan, Detroit, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

Plaintiffs have filed an action for monetary relief from the conduct of defendants relating to the purchase and maintenance of certain "units of investment." Plaintiffs have alleged securities fraud under the Securities Act of 1933 and the Securities Exchange Act of 1934, 17 C.F.R. 240.10b–5 and 15 U.S.C. §§ 77q, 77j; a claim for churning; and, an alleged violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, *et seq.* (Counts I, II, III, VIII). Plaintiffs have also alleged violations of several state law claims, including breach of fiduciary duty, breach of contract, misrepresentation and negligence (Counts IV–VII). Defendants have moved for summary judgment on

plaintiffs' Securities and RICO claims, or in the alternative, that these claims be submitted to arbitration. Defendants also seek to compel the arbitration of the remaining state law claims. The relevant facts follow.

Defendants John Dobbyn and Dyan Mac-Donald–Dobbyn are employed by defendant Merrill, Lynch. They established a program entitled the "MacDonald–Dobbyn Managed Commodity Program," (the "program") and as part of this program, the Dobbyns serviced discretionary commodity futures trading accounts.[1] It was through this program that plaintiffs purchased their investment units.

## SECURITIES ACT CLAIMS

Defendants argue that plaintiffs' securities claims should be dismissed inasmuch as the "securities" or "units of investment" alleged by plaintiffs are discretionary commodity futures contracts, which the Sixth Circuit has held are *not* securities. *Curran v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 622 F.2d 216 (6th Cir.1980), *aff'd on other grounds*, 456 U.S. 353, 102 S.Ct. 1825, 72 L.Ed.2d 182 (1982). In *Curran*, the court noted that the Supreme Court has defined a "security" so as to require a "common enterprise." *Id.* at 221, *citing Securities and Exchange Commission v. Howey*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946). *Curran* further held that the standard for determining the existence of a common enterprise is whether there is a horizontal commonality between an individual investor and a group of other investors. *Curran, supra*, at 221. Such a horizontal relationship would require a pooling of investors' interests, and linking these investments, so that the success or failure of other customers' contracts would directly impact plaintiffs' contract. *Id.* at 222.

Defendants argue that there was no such horizontal commonality in this case, insofar as plaintiffs' accounts were each maintained individually and were not tied to one another. In his affidavit, defendant John Dobbyn states that the only purchases and sales made in each discretionary commodities account were of commodity futures contracts. (Affidavit of John Dobbyn, ¶¶ 5–6 attached to Defendant's Motion, Docket Entry # 24). Moreover, defendant Dobbyn states that: 1) the funds received from each plaintiff for his respective account were not pooled for trading purposes with the funds of any other investors; 2) the gains and losses in each account were not in any way related to or dependent upon the trading success or failure of any other account; and, 3) defendants did not receive a share of the profits or losses from any discretionary commodities account. (*Id.* ¶¶ 7, 11, 12); *see also id.* ¶ 10.

In response, plaintiffs argue that defendants' marketing of the discretionary commodity accounts demonstrates that they were in fact securities. First, plaintiffs cite to numerous newsletters sent by the Dobbyns defendants in support of their position, in which they wrote: 1) "one would have to say that this is an excellent time to add a *unit* to a managed commodity account" (Exhibit C to Plaintiffs' Supplemental Brief, Docket Entry # 31) (emphasis added); 2) "[w]e consider this an excellent time to add a $25,000 *unit* to your account" (Exhibit D to Plaintiffs' Supplemental Brief, Docket Entry # 31 (emphasis added); and, 3) "[a]s we said last week, we consider this an excellent time to add *a unit to your account.*" (Exhibit E to Plaintiffs' Supplemental Brief, Docket Entry # 31) (emphasis added). Plaintiffs emphasize that defendants claimed that "all accounts do the same thing." Plaintiffs further argue that defendants' purchase of United States Treasury Bills and T–Bill Futures for the discretionary commodities accounts constituted a securities transaction and thus the entire MacDonald–Dobbyn Program comes within the securities laws. Plaintiffs contend that even if the T–Bills were purchased solely to use as collateral for commodities purchases, they were an integral part of the common enterprise and should therefore invoke the securities laws, *citing, Rubin v. United States*, 449 U.S. 424, 101 S.Ct. 698, 66

---

1. Plaintiffs dispute that these were "commodities" and argue that in substance, these accounts were securities. This argument will be rejected in a discussion found *infra.*

L.Ed.2d 633 (1981). Plaintiffs point to the language of 15 U.S.C. § 78j(b) in support of their argument. That section prohibits the use of any manipulative or deceptive devices "in connection with the purchase or sale of any security." Plaintiffs assert that the "in connection with" language requires only a nexus with the fraudulent conduct and the sale of securities, *citing, Superintendent of Insurance v. Bankers Life and Casualty Company*, 404 U.S. 6, 92 S.Ct. 165, 30 L.Ed.2d 128 (1971). Plaintiffs also challenge defendant John Dobbyn's failure to mention these accounts in his affidavit, when at his deposition, he admitted to acquiring these T–Bills for separate cash accounts. (Deposition of John Dobbyn, pp. 45–46, Exhibit A to Docket Entry # 31).

The Court agrees with the following arguments put forth by defendants and finds that these discretionary commodities accounts are not securities, since the accounts do not have horizontal commonality, nor do the T–Bills convert plaintiffs accounts into securities.

■■■ First, a common enterprise is not created by virtue of the statement that all accounts do the same thing, nor by referring to "units" in the monthly newsletters. While it may be proper to consider extrinsic evidence in determining whether something is a security, *SEC v. Professional Associates*, 731 F.2d 349 (6th Cir.1984), plaintiffs are incorrect in asserting that the marketing of a program is the determinative factor. A security is judged by its substance and not by its form. An argument similar to the plaintiffs' was rejected by the Court in *Curran:*

> [R]egardless of what plaintiffs may have been told, their account was handled independently of others involved in the program, and was never used in a manner that would suggest a common enterprise with the companion accounts. [An account executive] testified, however, that ... [plaintiffs] were never given a different description of the account. ... We do not view this tempting expectancy as elevating the trading account to the full dignity of a security.... It is true that

plaintiffs might have hoped that defendant's control over a number of accounts would increase the agent's clout in the market. The fact remains, however, that the plaintiffs always understood that their return would be based on a one-to-one vertical relationship with the trader. *Curran*, 622 F.2d at 225. Plaintiffs here have not even shown that the marketing of the accounts would give rise to an inference of pooling or contractual tying, as did the marketing brochures cited in *Professional Associates, supra.* Plaintiffs here make constant reference to portions of defendants' newsletter that mention the term "units." Presumably plaintiffs are arguing that the term "unit" implies a single part of a whole pool. Standing alone, this argument does not lead to the conclusion that the investors' monies were pooled. A unit, as the term is used in the proferred newsletters, seems to be referring to a minimum investment figure, rather than a limited number of units that form a whole. One of defendants' newsletters indicated that the $25,000 investment block related primarily to the purchase of the T–Bills, rather than to increasing a general investors' pool. Moreover, the statement that "all accounts do the same thing" similarly is not conclusive of pooling, and does not contradict defendant John Dobbyn's statement of how the accounts were managed. (Dobbyn Affidavit ¶ 10).

■■■ Finally, plaintiffs' argument that the presence of the T–Bills brings the transaction within the securities laws is also rejected. The *Rubin* case cited by plaintiffs is readily distinguishable inasmuch as fraud was alleged in relation to the sale of the collateral securities, whereas no such fraud is alleged here as to the T–Bills. And, in cases with fact situations similar to the one here, courts have held that the incidental trading of securities to finance a discretionary commodities account does not convert the account into a "security." *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105 (2d Cir.1986); *Mullis v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 492 F.Supp. 1345 (D.Nev.1980). Accordingly, this Court finds that plaintiffs' discretionary commodities accounts are not "se-

curities" and thus plaintiffs' "securities" claims must fail.

## RICO

■ Count VIII of plaintiffs' complaint alleges violations of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(b), (c) and (d). As a threshhold question, each of these sections requires plaintiffs first to plead a "pattern of racketeering activity." Paragraph 44 asserts that the pattern of racketeering consists of "numerous acts of wire fraud, mail fraud and securities fraud." There are no factual allegations in Count VIII; paragraph 41 refers the Court to the preceding counts. As noted above, the preceding counts all assert *securities* fraud; no mail or wire fraud, is pleaded. Thus, since the securities claims are dismissed, there are no predicate acts on which to base the RICO claim and this count must therefore be dismissed. *See Warner Communications, Inc. v. Murdoch*, 581 F.Supp. 1482 (D.Del.1984).[2]

## ARBITRATION

■ Plaintiffs' primary argument against compelling the remaining state claims to arbitration is the validity of the signed arbitration agreements between the parties. Plaintiffs contend that these agreements do not comply with the then applicable federal regulations, 17 C.F.R. 180.3(2), adopted by the Commodity Futures Trading Commission (CFTC). These regulations require the arbitration agreement to: 1) be signed separately; 2) not be made a condition for entering into the futures contract; 3) advise the customer in writing of his right to seek reparations; and, 4) contain cautionary language in large bold-face type, advising the customer that consent to arbitration is voluntary and that such consent may waive the right to trial by jury in a court of law. Defendants' agreement did include the wording of all the required conditions, *see* Exhibit 1 to

Docket Entry # 24; *see also,* Exhibit A to Defendants' Reply Brief, Docket Entry # 28; however, plaintiffs claim that the cautionary language required by # 4 above was not in large bold-face type. The type was in fact bold, although this was not evident from plaintiffs' copies of the arbitration agreement, because of the copies made. Plaintiffs do contend that the type size was not large enough. However, as defendants point out, the applicable regulations do not specify how large the type must be, as they do, for example, in some consumer legislation. A review of the agreements demonstrates that while the type on the cautionary language is not larger than the remaining type, neither is it smaller. The language is by no means boiler plate and it would be sufficiently apparent and noticeable to a reasonable person. Accordingly, the arbitration agreement does comply with the regulations.

■ Plaintiffs next claim that these agreements are unconscionable inasmuch as plaintiffs were not advised in advance that the effect of the arbitration clause would be to preclude plaintiffs from pursuing their remedies at law. This is rebutted by plaintiffs' valid signatures on the arbitration agreements. Plaintiffs have not alleged any other type of duress, coercion or "absence of meaningful choice." Plaintiffs have not overcome the presumption that their signatures on the arbitration agreements evidenced their voluntary consent to arbitration. Therefore, the arbitration agreements are valid and will be enforced. For the foregoing reasons,

IT IS ORDERED, that defendants' Motion for Partial Summary Judgment is GRANTED as to Counts I, II, III and VIII of plaintiffs' Complaint and their Motion to Compel Arbitration of the remaining counts, IV–VII, is also GRANTED. Judgment shall be entered dismissing Counts I, II, III and VIII of the Complaint and order-

---

**2.** It should be noted that since the filing of this motion, the Supreme Court has held that securities claims and RICO claims are arbitrable. *Shearson/American Express, Inc. v. McMahon,* —— U.S. ——, 107 S.Ct. 2332, 96 L.Ed.2d 185, *Reh'g denied,* —— U.S. ——, 108 S.Ct. 31, 97 L.Ed.2d 819 (1987). Hence, even if plaintiffs' securities' claims were upheld, the RICO and securities' claims would be compelled to arbitration.

ing arbitration of Counts IV, V, VI and VII.