RICHARD F. SCHWEIG, Plaintiff-Appellant, v. JAMES W. SCHACHT, as Acting Director of the Department of Insurance, *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—93—3399

Opinion filed November 16, 1995.

Thomas D. Decker & Associates, Ltd., of Chicago (Thomas D. Decker, of counsel), for appellant.

Roland W. Burris, Attorney General, of Chicago (Rosalyn B. Kaplan, Solicitor General, and Mary E. Welsh, Assistant Attorney General, of counsel), for appellee.

JUSTICE SHEILA M. O'BRIEN delivered the opinion of the court:

Plaintiff, Richard F. Schweig, appeals the circuit court's order affirming the decision of the Director of Insurance of the State of Il-

linois (hereinafter Director) to revoke plaintiff's insurance producer's license. We affirm.

On August 7, 1990, the Director entered an order revoking plaintiff's insurance producer's license pursuant to section 505.1(a)(6) of the Illinois Insurance Code, which states "[a]ny license issued under this Article may be suspended or revoked *** if the Director finds that the licensee *** has, in the transaction of business under his license, used fraudulent, coercive or dishonest practices, or has demonstrated incompetence, untrustworthiness or financial irresponsibility." (215 ILCS 5/505.1(a)(6) (West 1992).) The Director's order of revocation stated that plaintiff had demonstrated incompetence, untrustworthiness and financial irresponsibility by being convicted on five counts of violating section 12(A) of the Illinois Securities Law of 1953. That section provides "[i]t shall be a violation of the provisions of this Act for any person: *** [t]o offer or sell any security except in accordance with the provisions of this Act." 815 ILCS 5/12(A) (West 1992).

On August 29, 1990, plaintiff filed a request for a hearing to object to the order of revocation. Plaintiff contended the Director erred in revoking his insurance producer's license because (a) his violations of section 12(A) of the Securities Act did not demonstrate incompetence, untrustworthiness, or financial irresponsibility; and (b) even if his securities offenses did demonstrate incompetence, untrustworthiness, or financial irresponsibility, they did not occur "in the transaction of business under his license" as required by section 505.1(a)(6) of the Code before an insurance producer's license can be revoked.

The Illinois Department of Insurance (hereinafter defendant) countered that section 505.1(a)(6) permits the revocation of an insurance producer's license for *any* incompetence, untrustworthiness, or financial irresponsibility, even if it does not occur in the transaction of business under his license. Further, defendant argued that plaintiff's securities offenses demonstrated sufficient *incompetence*, untrustworthiness, or financial irresponsibility to justify the Director's decision to revoke plaintiff's license.

At the hearing held on October 26, 1990, plaintiff testified he received his insurance producer's license in 1983. Plaintiff also testified he ventured into the investments field and traded securities independently of his insurance business. Unfortunately, "the trading went poorly" and his investors lost money. In an effort to assist the investors, who were his close friends, plaintiff deposited some of his own money with them. However, he lost those funds too.

Plaintiff testified that on May 30, 1990, he pleaded guilty to an amended indictment charging him with violating section 12(A) of the

Securities Law and, as part of his sentence, he was ordered to pay $35,000 in restitution. Plaintiff does not know to whom he is paying restitution, though, because "it [is] run through the Du Page County probation office and they don't tell [him] any details." Plaintiff also testified he pleaded guilty because he felt bad for the people who had lost money; however, he does not believe he actually violated the Securities Law.

Defendant entered into evidence the original indictment against plaintiff charging him with five counts of violating section 12(F) of the Securities Law, which bars "[engaging] in any transaction, practice or course of business in connection with the sale or purchase of securities which works or tends to work a fraud or deceit upon the purchaser or seller thereof." (815 ILCS 5/12(F) (West 1992).) The indictments alleged that in connection with various partnerships, plaintiff "failed to utilize the proceeds of such sale of securities as represented and instead converted such proceeds *** thereby committing a fraud upon [various partners in those partnerships]." In those five counts, plaintiff was accused of defrauding his clients a total amount of approximately $32,000.

Defendant informed the hearing officer that plaintiff eventually pleaded guilty to an amended indictment charging him with violating section 12(A) of the Securities Law, which prohibits "[offering] or [selling] any security except in accordance with the provisions of this Act." (815 ILCS 5/12(A) (West 1992).) Defendant also entered into evidence the trial court's sentencing orders, which placed plaintiff on probation with the following conditions: plaintiff must immediately pay $10,000 in restitution and another $5,000 per year for five years in equal monthly installments; plaintiff must not engage in any business authorized or regulated by the Securities Act; and plaintiff must perform 100 hours of community service.

The hearing officer issued his findings of fact and conclusions of law on January 22, 1991. First, the hearing officer rejected the argument that the Director could revoke plaintiff's license under section 505.1(a)(6) *only* if plaintiff's act of incompetence, untrustworthiness or financial irresponsibility were committed in the transaction of business under his license. The hearing officer interpreted section 505.1(a)(6) as allowing the revocation of plaintiff's license for *any* acts of incompetence, untrustworthiness or financial irresponsibility.

Second, the hearing officer made factual findings that plaintiff pleaded guilty on or about May 30, 1990, to five counts of violating section 12(A) of the Securities Law by "[engaging] in a transaction in connection with the sale of securities which tended to work a fraud or deceit in that [plaintiff] failed to utilize the proceeds of such sale of

securities as represented and instead converted such proceeds to his own benefit thereby committing a fraud upon the individual partners of [various partnerships]."

The hearing officer concluded that plaintiff "by his conviction on Securities Laws violations and the Court's resultant probation order requiring the repayment of $35,000 in funds held by [plaintiff] in a fiduciary capacity, has demonstrated untrustworthiness and financial irresponsibility. Therefore, the Director of Insurance properly and correctly revoked [plaintiff's] insurance producer's license pursuant to Section 505.1(a)(6) of the Illinois Insurance Code." On February 7, 1991, the Director entered an order approving the hearing officer's findings and again revoking plaintiff's insurance producer's license.

Plaintiff filed a complaint for administrative review in the circuit court, arguing the hearing officer misinterpreted section 505.1(a)(6) when he ruled that it allows the revocation of an insurance producer's license for acts unrelated to the insurance business.

Plaintiff also argued the hearing officer erred in determining that plaintiff's securities convictions were premised on his illegally converting customers' funds. Plaintiff contended that the hearing officer ignored or misunderstood the evidence that although plaintiff was *originally* indicted under section 12(F) of the Securities Act for converting his customers' funds, he pleaded guilty to an amended indictment under section 12(A) of the Securities Act. Plaintiff argued that his guilty plea to violating section 12(A) did not involve an admission to the converting of customers' funds, and therefore the hearing officer erred in determining that plaintiff's securities offenses demonstrated untrustworthiness and financial irresponsibility.

The trial court determined the hearing officer's findings were not against the manifest weight of the evidence and affirmed the revocation of plaintiff's insurance producer's license. Plaintiff filed this timely appeal.

Our duty in this administrative review case is the same as that of the circuit court: to examine the record and determine whether the findings and decision of the administrative hearing officer are against the manifest weight of the evidence. *Hall v. Board of Education* (1992), 227 Ill. App. 3d 560, 574, 592 N.E.2d 245.

■ First, we address the proper interpretation of section 505.1(a)(6), which states "[a]ny license issued under this Article may be suspended or revoked, *** if the Director finds that the licensee *** has, in the transaction of business under his license, used fraudulent, coercive or dishonest practices, *or* has demonstrated incompetence, untrustworthiness or financial irresponsibility." (Emphasis added.) 215 ILCS 5/505.1(a)(6) (West 1992).

■ Our supreme court has held the word "or" ordinarily is used in the disjunctive sense, meaning that the members of the sentence that it connects are to be taken separately. (*People v. Frieberg* (1992), 147 Ill. 2d 326, 349, 589 N.E.2d 508.) Thus, we must read that part of section 505.1(a)(6) coming before the disjunctive "or" separately from the part of 505.1(a)(6) coming after the "or." Under this interpretation, 505.1(a)(6) (215 ILCS 5/505.1(a)(6) (West 1992)) reads as if it were two separate sentences: (1) "[a]ny license issued under this Article may be suspended or revoked *** if the Director finds that the licensee *** has, in the transaction of business under his license, used fraudulent, coercive or dishonest practices"; (2) "[a]ny license issued under this Article may be suspended or revoked *** if the Director finds that the licensee *** has demonstrated incompetence, untrustworthiness or financial irresponsibility." Therefore, an insurance producer's license can be revoked for fraudulent, coercive or dishonest practices only if he committed those acts in the transaction of insurance business. However, an insurance producer's license may be revoked for incompetence, untrustworthiness or financial irresponsibility, even if such acts are unrelated to the insurance business.

■ Plaintiff contends, though, the hearing officer erred in determining that his securities dealings demonstrated financial irresponsibility. Plaintiff argues "the record *** is barren of support for a conclusion that [plaintiff's] securities dealings were irresponsible, as opposed merely to unsuccessful (in common with countless others)."

We disagree. Since the legislature did not define "financial irresponsibility" as that term is used in section 505.1(a)(6), it must be given its ordinary and popularly understood meaning. (*Frieberg*, 147 Ill. 2d at 347.) The American Heritage College Dictionary defines "financial irresponsibility" as the lack of good judgment or sound thinking relating to the management of money and other assets. See American Heritage College Dictionary 510, 719, 1163 (3d ed. 1993) (defining "finance," "financial," "irresponsible," "responsible" and "responsibility").

Even if, as plaintiff argues, he did not convert his clients' funds, he still pleaded guilty to offering or selling security in nonconformance with the provisions of the Securities Act. (815 ILCS 5/12(A) (West 1992).) As a result, plaintiff was ordered to pay $35,000 in restitution and refrain from engaging in any business authorized or regulated by the Securities Act. We think plaintiff's Securities Act violations and resulting punishment evidence that he exhibited a lack of good judgment or sound thinking relating to the management of money and other assets. Therefore, the hearing officer's determina-

tion that plaintiff demonstrated financial irresponsibility was not against the manifest weight of the evidence. Accordingly, we affirm the Director's decision to revoke plaintiff's insurance producer's license pursuant to section 505.1(a)(6).

■ Plaintiff contends, though, that section 505.1(a)(6) is unconstitutionally vague. However, plaintiff's argument must fail because we have already determined his conduct falls within the statutory proscription. See *People v. Anderson* (1992), 148 Ill. 2d 15, 28, 591 N.E.2d 461 (a party cannot challenge a statute as being unconstitutionally vague if his conduct clearly falls within the statutory proscription, even if the statute may be vague as to other conduct).

Affirmed.

HOFFMAN, P.J., and CAHILL, J., concur.