INTEGRATED RESEARCH SERVICES, INC., *et al.*, Plaintiffs-Appellants, v. THE SECRETARY OF STATE, Securities Department, *et al.*, Defendants-Appellees.

First District (4th Division)    No. 1—00—3102

Opinion filed February 7, 2002.

Foley & Lardner, of Chicago (Scott Early, Michael Glackin, and Jerald Jeske, of counsel), for appellants.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and John P. Schmidt, Assistant Attorney General, of counsel), for appellees.

JUSTICE HARTMAN delivered the opinion of the court:

Plaintiffs, Integrated Research Services, Inc. (IRS), and Jason Jankovsky, sought administrative review of a decision by defendants, the Illinois Secretary of State, Securities Department, Jesse White, Secretary of State for the State of Illinois, and William L. Houlihan, Chief Deputy Director of the Illinois Securities Department (collectively the Secretary), finding that plaintiffs had offered to the public a security that was not registered with the Secretary of State and permanently prohibiting plaintiffs from offering or selling any securities in or from the State of Illinois. The circuit court affirmed the Secretary's order. On appeal plaintiffs contend that the Secretary erred in: (1) determining that the definition of "security" in the Illinois Securities Law of 1953 (the securities law) (815 ILCS 5/1 *et seq.* (West 1998)) includes investment contracts that involve trading in foreign currencies and (2) concluding that plaintiffs were offering "investment contracts" to their clients.

IRS offers investors the opportunity to participate in investments in cash foreign currencies on the interbank foreign exchange market in London, England (the Forex market). Jankovsky is the director of North American operations for IRS.

On July 8, 1999, the Secretary issued a temporary order prohibiting plaintiffs from offering or selling any securities in or from the State of Illinois. The order stated that the investment opportunity offered on the IRS website was a "security" as defined by the securities law and that plaintiffs had violated the securities law by failing to register the offered investment as a security with the Secretary.

An administrative hearing was held on January 13, 2000. The parties introduced several exhibits including the standard customer account agreement and cash commodity trading authorization forms signed by plaintiffs' customers and excerpts from plaintiffs' Internet website.

Jankovsky, the only witness, testified that IRS solicits customers through direct mailing and its website. IRS hires traders in London who execute the foreign currency transactions on behalf of IRS clients. To open an account with IRS a prospective investor must have an interview during which Jankovsky informs the investor of the risks involved with trading in foreign currencies. Each investor must sign a cash commodity trading authorization form which grants IRS power of attorney to buy, sell, and trade foreign currencies on behalf of the

investor. When a customer invests with IRS, his check is initially deposited in a client equity management account at the Canadian Imperial Bank of Commerce in Freeport, Grand Bahama. The funds are then transferred to Lloyd's Bank in London where they are held in segregated customer accounts within the framework of an omnibus account. IRS funds are not comingled with customer funds.

Customers pay IRS a 20% commission on all profits realized from the trades. Jankovsky admitted that if there is no profit there is no commission. The customer agreement gives IRS the right to charge additional fees.

According to Jankovsky, investors can control their individual accounts by adding or subtracting funds at any time, placing a temporary hold on their accounts, and limiting the trading of their funds to specified currencies. Jankovsky admitted that plaintiffs never registered with the Secretary.

On December 3, 1999, the Secretary issued his final administrative decision finding that the investment opportunity offered by plaintiffs was an "investment contract" and therefore a security under the securities law and that plaintiffs violated the securities law by failing to register the investment offering as a security. The Secretary permanently prohibited plaintiffs from offering or selling any securities in or from the State of Illinois. On August 4, 2000, the circuit court affirmed the Secretary's decision.

■ An administrative agency's factual findings are deemed to be *prima facie* true and correct and may be set aside only if they are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 692 N.E.2d 295 (1998) (*Belvidere*). In the present case the issues involve questions of law entirely; therefore, the standard of review is *de novo*.[1] *Belvidere*, 181 Ill. 2d at 205.

## I

Plaintiffs first argue that, under the definition of "security" in section 2.1 of the securities law (815 ILCS 5/2.1 (West 1998)) (section 2.1), a foreign currency transaction is a "security" only if it involves a "put, call, straddle, option, or privilege entered into on a national securities exchange." Because it is undisputed that the investment opportunity they offer is not any of these and is not traded on a "national

---

[1]IRS argues alternatively that this case should be remanded because the circuit court applied the wrong standard of review. Whatever standard of review the circuit court applied is irrelevant, as this court reviews the final decision of the administrative agency and not the decision of the circuit court. *Gounaris v. City of Chicago*, 321 Ill. App. 3d 487, 747 N.E.2d 1025 (2001).

securities exchange," plaintiffs argue that it is not a security. The Secretary responds that the definition of "security" also includes "investment contracts." Consequently, an investment opportunity involving foreign currency transactions is a security if it is an investment contract.

Section 2.1 defines "security" in pertinent part as "any note, stock, treasury stock, bond, debenture, *** investment contract, *** or any put, call, straddle, option, or privilege entered into on a national securities exchange relating to foreign currency, or, in general, any interest or instrument commonly known as a 'security', or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing." 815 ILCS 5/2.1 (West 1998).

■ A court's primary objective in construing a statutory provision is to determine and give effect to the legislature's intent. *Kraft, Inc. v. Edgar*, 138 Ill. 2d 178, 561 N.E.2d 656 (1990). The language of the provision is the best evidence of that intent and must be given its plain and ordinary meaning. *Paris v. Feder*, 179 Ill. 2d 173, 688 N.E.2d 137 (1997) *(Paris)*. A *de novo* standard of review is applied to issues of statutory construction. *Paris*, 179 Ill. 2d at 177-78.

■ Relying on *Du Page Aviation Corp., Flight Services, Inc. v. Du Page Airport Authority*, 229 Ill. App. 3d 793, 594 N.E.2d 1334 (1992), plaintiffs argue that the statutory construction rule of *expressio unis est exclusio alterius* applies, pursuant to which a court may find that when certain things are listed or specified in a statute, the legislative intent to exclude all other things from the statute's operation may be inferred. According to plaintiffs, because section 2.1 defines a security as those foreign currency transactions involving a "put, call, straddle, option or privilege entered into on a national securities exchange", all other foreign currency transactions including cash transactions are excluded from the definition.

■ The statutory definition of "security" includes many types of transactions each separated by the disjunctive "or." The word "or" ordinarily is used in the disjunctive sense, meaning that the members of the sentence that it connects are to be taken separately. *In re C.N.*, 196 Ill. 2d 181, 752 N.E.2d 1030 (2001) *(C.N.)*; *People v. Frieberg*, 147 Ill. 2d 326, 589 N.E.2d 508 (1992). Each phrase set off by the word "or" constitutes an independent basis for finding that a transaction is a security. See *C.N.*, 196 Ill. 2d at 210-11; *Schweig v. Schacht*, 276 Ill. App. 3d 311, 657 N.E.2d 1152 (1995). Thus an investment scheme involving cash foreign currency transactions is a security if it is an investment contract within the meaning of section 2.1, even though it is not a "put, call, straddle, option, or privilege entered into on a

national securities exchange." Because investment contracts are part of the list in section 2.1 of transactions that constitute a security, the rule of *expressio unis est exclusio alterius* does not apply here.

## II

■ The issue then becomes whether the investment opportunity offered by plaintiffs is an "investment contract" within the meaning of section 2.1. Plaintiffs contend that the Secretary erred in concluding that it was. An investment contract is a contract, transaction, or scheme whereby a person (1) invests money (2) in a common enterprise (3) with profits to come solely from the efforts of others.[2] *Securities & Exchange Comm'n v. W.J. Howey Co.*, 328 U.S. 293, 90 L. Ed. 1244, 66 S. Ct. 1100 (1946) *(Howey)*; *Ronnett v. American Breeding Herds, Inc.*, 124 Ill. App. 3d 842, 464 N.E.2d 1201 (1984) *(Ronnett)*.

## A

■ Plaintiffs first argue that the second element is absent because no common enterprise exists between IRS and its clients. A common enterprise is one in which the fortunes of the investor are interwoven with and dependent upon the efforts and success of those seeking the investment or of third parties. *Anderson v. Grand Bahama Development Co.*, 67 Ill. App. 3d 687, 384 N.E.2d 981 (1978). To satisfy the common enterprise requirement, an investment must have either horizontal or vertical commonality. *Ronnett*, 124 Ill. App. 3d at 848. Vertical commonality exists where the investor's fortunes are interwoven with and dependent upon the success of the promoter. *Ronnett*, 124 Ill. App. 3d at 848.

Relying on *Lopez v. Dean Witter Reynolds, Inc.*, 805 F.2d 880 (9th Cir. 1986) *(Lopez)*, *Poindexter v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 684 F. Supp. 478 (E.D. Mich. 1988) *(Poindexter)*, *Cohen v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 722 F. Supp. 24 (S.D.N.Y. 1989), and *Shotto v. Laub*, 635 F. Supp. 835 (D. Md. 1986) *(Shotto)*, plaintiffs argue that, as a matter of law, investment schemes involving discretionary trading accounts are not investment contracts because there is no common enterprise. The Secretary responds that investment schemes involving discretionary trading accounts satisfy the common enterprise prong of the *Howey* test where, as in the present case, the broker's commission is a percentage of profits realized by the investor rather than a flat fee based on the number and size of the trades. No Illinois case has addressed the issue of whether a discretionary trading account is an investment contract.

---

[2]Neither party disputes that the first requirement, an investment of money, has been met.

In *Security & Exchange Comm'n v. R.G. Reynolds Enterprises, Inc.*, 952 F.2d 1125 (9th Cir. 1991) (*Reynolds*), the court held that vertical commonality exists where there is an arrangement between the investor and the promoter to share profits on a percentage basis. In that case the agreement that the promoter would take a management fee based on a percentage of the profits, thus making his own profit contingent on the profit of his investors, was sufficient to show vertical commonality and satisfy the second prong of the *Howey* test.

■ In the present case it is undisputed that IRS received a 20% commission on customer profits, making plaintiffs' profit contingent on the profit of its investors. Thus, under *Howey* and *Reynolds*, vertical commonality exists in this case.

The cases cited by plaintiffs are distinguishable. In *Shotto*, the court found that plaintiffs' discretionary trading accounts were not investment contracts where plaintiffs failed to allege any interdependency between defendants' earnings and plaintiffs profit or loss. In considering discretionary trading accounts, the court stated that "where a plaintiff alleges some interdependency between the profits and losses of the investor and those of the broker, *i.e.*, payment made to the broker on a percentage of the profits basis, then vertical commonality is present." *Lopez* does not indicate how the commissions were paid. *Poindexter* did not discuss vertical commonality, finding that in order to have a common enterprise there must be horizontal commonality.

Because vertical commonality is present here, there is a common enterprise and the second prong of the *Howey* test is met. See *Ronnett*, 124 Ill. App. 3d at 848-49.

## B

Plaintiffs further argue that the third prong of the *Howey* test has not been satisfied because IRS customers maintain significant control over their individual accounts.

■ The third prong of the *Howey* test is an expectation of profits "solely" from the efforts of others. *Howey*, 328 U.S. at 299, 90 L. Ed. at 1249, 66 S. Ct. at 1103. Courts have rejected a literal interpretation of "solely" because it would frustrate the remedial purposes of the securities law. *Ronnett*, 124 Ill. App. 3d at 850. Federal courts have held that the test is whether "the efforts made by those other than the investor are the undeniably significant ones, those essential managerial efforts which affect the failure or success of the enterprise." *Securities & Exchange Comm'n v. Glenn W. Turner Enterprises, Inc.*, 474 F.2d 476, 482 (9th Cir. 1973). The third prong is met where the investor has little or no control over the enterprise. *Ronnett*, 124 Ill. App. 3d at 850.

IRS reserved control of the enterprise to itself. The success of the enterprise depended primarily on the investment decisions made by IRS and its London traders. According to Jankovsky, an investor could limit trading on his account to certain currencies or place a hold on trading of his account. This testimony is inconsistent with the broad authority given to IRS in the trading authorization form signed by each investor. Moreover, it does not change the fact that IRS and the London traders decided which particular trades to execute. Even if an investor limits trading on his account to a specific currency, he does not decide what particular trades to execute within that currency. Because investors exercise minimal control over the enterprise, the third prong of the *Howey* test is satisfied.

■ The Secretary did not err in finding that plaintiffs were offering an investment contract where all prongs of the *Howey* test were met.

In its order of prohibition, the Secretary permanently prohibited plaintiffs from offering or selling any securities in Illinois. Clearly, plaintiffs should be banned from offering or selling the securities involved in this matter; but there is no basis for nor is it fair to permanently ban Jankovsky from offering or selling all properly registered securities in Illinois.

Accordingly, for the reasons set forth above, the judgment of the circuit court of Cook County is affirmed and remanded with directions to permanently prohibit Jankovsky from offering or selling only the securities involved in this matter.

Affirmed and remanded with directions.

HOFFMAN, P.J., and THEIS, J., concur.